JOHN H. GOLDEN, plaintiff in error, vs. THOMAS FOWLER, defendant in error.

[1.] The arbitrators in a case, were to have the powers and authority of arbitrators under the arbitration Act of 1856. *Held*, That they had power to examine a party to the arbitration, as a witness for himself.

[2.] Equity readily receives the "excuses of the mortgagor, not only for the purpose of giving him time to procure the money previously to the foreclosure, but also for the purpose of opening the foreclosure."

Motion to make award the judgment of the Court and exceptions thereto, in Fulton Superior Court. Decided by Judge BULL, April Term, 1858.

The facts of this case, and the points made and decided in the Court below, are sufficiently stated in the opinion of this Court.

MANNING, for plaintiff in error.

OVERBY & BLECKLY; and GLENN, *contra*.

*By the Court.*—BENNING J. delivering the opinion.

At October Term, 1857, of Fulton Superior Court, it was ordered by the Court, that all the cases pending between

Thomas Fowler and John H. Golden, in the Superior Courts of Fulton and DeKalb counties, should be submitted to the arbitrament and award, of Jesse M. Cook and Thomas M. Echols; and, if they disagreed, Edwin Paine was to act as umpire, to decide between them. The arbitrators were to have the powers given to arbitrators, by the Act of 1856, to authorize persons to submit controversies to arbitration, &c.; and the award was to be made, the judgment of the Court.

There were three cases pending, between Fowler and Golden, one, in DeKalb Superior Court, the other two, in Fulton Superior Court.

The case in DeKalb, was a case in equity, in which, Golden was plaintiff, and Fowler defendant; and in which, the bill stated, that on the 22d of Nov. 1855, Golden bought from Fowler, a tract of land, containing one hundred and eighty acres, more or less, lying in DeKalb county, it being, the South part of lot No. 185, in the fifteenth district of what, originally, was Henry county; that Golden was to give Fowler, $2,100 for the land; that as part of the payment for the land, Golden conveyed to Fowler, a 'city lot' in Atlanta, at $600, it being No. 45, on Marietta street; that, for the rest of the payment, he gave Fowler, his four promissory notes; the first for $250, due the 25th of December, 1856; the second for $250, due the 1st of April, 1857; the third, for $500, due the 1st of April, 1858; the fourth, for $500, due the 1st of April, 1859. That on the 22d Nov. 1855, Fowler delivered to Golden, his bond conditioned for titles to said land to be made to Golden, on the payment of the notes, according to their tenor and effect.

That Fowler, on the 30th of December, 1855, only five days after the first of the notes fell due, fraudulently procured one Nathan Clay, a constable, to levy on Golden's interest in the land, under a *fi. fa.* from a Justice's Court, which had been assigned to him, Fowler; that afterwards, on the first Tuesday in February 1857, Fowler fraudulently procured Golden's interest in the land, to be sold at Sheriff's

Golden vs. Fowler.

sale; that, at said sale, Fowler publicly proclaimed, that he had sold said land to Golden, and had given Golden a bond for titles, but that Golden had failed to comply with his contract, and the purchase money was unpaid, and that he, Fowler, was then having the land sold for the purpose of perfecting title in himself again; that Fowler then bid off Golden's interest at one dollar.

That Golden had no notice or knowledge of the levy and sale, until on or about the 2d of March, 1857; which was about a month after the sale.

That the Sheriff had not, as Golden believed, yet executed a deed to Fowler, but would, as Golden was advised and believed, execute a deed to him, unless he should be enjoined from doing so; and that Fowler would trade the notes, unless he was restrained from trading them; that Fowler threatened to trade the notes, the consideration for the land, to innocent purchasers, so as to harrass Golden, with suits, and in the end, to compel him to pay notes for which, no consideration had been received.

The bill prayed, that the Sheriff might be restrained from making a deed to Fowler, if he had not made one; that Fowler might be restrained from trading the notes; that if a deed had been made to Fowler, it might be declared *void;* that the notes might be delivered up and cancelled, and that $600, with the interest thereon, should be decreed to be paid to Golden, as the purchase money, or damages, sustained by Golden, in the premises; and that he, Golden, might have such other and further relief, as the nature of the case might require.

Fowler answered the bill.

Of, the two cases pending in Fulton, one was an action by Golden against Fowler, on an account for $104 50-100.

The other, was a case growing out of an order of Court, and an affidavit of illegality, made by Golden, both concerning a mortgage.

The order was as follows:

"Thomas Fowler,     } *Rule Nisi*, to foreclose Mortgage, Octo-
            vs.        }                 ber Term, 1856."
John H. Golden.   }

" It appearing to the Court, that the respondent in the above stated case, has equitable sets-off, in the above stated case, and, that a rule absolute has been granted ; it is therefore ordered, that the plaintiff show cause, at the next Term of this Court, why said rule should not be set aside, and the said sets-off be admitted ; and it is further ordered, that the plaintiff be served," &c.

The rule absolute referred to in this order, was a rule by which, the Court after reciting what follows substantially in italics: viz: *That a rule nisi had been granted at April Term* 1856, *which required Golden to pay into Court, by the first day of that Term, ( Oct. Term,* 1856,) *the principal and interest due on a certain promissory note made by Golden to Fowler, dated the* 7*th day of January,* 1856, *due one day after date, for $800 ; besides the costs of the proceeding ; or to show cause, if any he had, why he should not do so ; and which rule nisi declared, that in default of his doing so, the equity of redemption of Golden, to city lot, in Atlanta, known as the west half of lot No.* 3, *in block No.* 17, *containing the half of an acre ; also, to forty-five acres, more or less. of lot No.* 191, *in the* 17*th district of what was originally Henry county ; and also, to twenty-two acres two rods and fourteen poles of No.* 190, *in the same district ; would be forever barred and foreclosed: And that Golden had failed to pay the said money due to Fowler, and had shown no cause why he ought not to have paid it ;* ordered and adjudged, that the equity of redemption to said mortgaged premises, should be forever barred and foreclosed ; and that Fowler should recover of Golden, $800, for his principal, and $42 for his interest, to that date, besides the costs.

Notwithstanding the granting of the *rule nisi*, to set aside this rule absolute, Fowler caused an execution to be issued on the rule absolute. And to this execution, Golden filed an affidavit of illegality, in which, he took the ground, that the rule absolute was *suspended* by the *rule nisi* to set it aside, and that, therefore, it was illegal for an execution to be issued on the rule absolute.

These three were the cases to which, the order of submission to arbitration, referred, as pending, between Golden and Fowler.

The *award* of the arbitrators, was, recitals omitted, as follows: " Finding the town lot No. 3, in block seventeen, in the possession of Fowler, and by his Fowler's own acts, we decree, that all the notes and mortgages, and all other liabilities, be null and void, and shall be cancelled to each party; and we further decree, that the same be done with the one hundred and eighty acres of land in DeKalb, also; and we further decree, that the said Thomas Fowler is to pay unto the said John H. Golden, the sum of $676 for his principal debt, and the sum of $45 dollars, for our services, and all other lawful costs which has accrued in the several cases; and that said several actions be entered settled, upon the payment of said sums; and all other matters, whether in the possession of Fowler, or any other person by assignment or otherwise, be null and void, or to be settled by said Fowler."

At April Term, 1858, Golden moved to have this award made, the judgment of the Court.

Fowler resisted this motion, contending, that the award was void, on the following grounds:

1st. That the arbitrators had held, that they were bound to proceed by the arbitration Act of 1855–6, and permitted Golden, to testify in his own behalf:

2d. That they awarded $45, to be pald, for their services, by Fowler, and nothing by Golden.

3d. That they ordered this sum to be paid to *Golden*.

4th. That the award (as Fowler believed and as he charged,) was not executed by all the arbitrators at the same time, or, in each other's presence.

5th. That the award does not dispose absolutely, of the suits referred, but directs the entry of "settled," to be made, only, on condition, that the several sums awarded against Fowler, are paid.

6th. That the award is outside of the submission in this; that it declares, in effect, that all the notes, mortgages, and all the other liabilities, held by said Fowler, growing out of the sale by him to Golden, of the DeKalb land, shall be void; thereby, setting aside a contract of the parties, which was not attacked, or put in issue, by any of the pleadings in any of the cases referred.

7th. And, outside of the submission in this; that it directs, that all other matters in the possession of Fowler and other persons by assignment or otherwise, be null and void, or to be paid by said Fowler.

8th. And in this; that it directs Fowler, to pay Golden $676, when none of the cases embraces any demand or demands, in favor of Golden, for that sum; and the parties were not at issue touching any such sum; and the cases, singly or collectively, were not cases in which, so large a sum could have been recovered by Golden, against Fowler.

9th. That it cannot be determined in what case, the $676 was to be made the judgment.

10th. That the award is in the alternative, in some of its most important provisions.

11th. That the award is indefinite and uncertain.

12th. That the award is unintelligible.

13th. That the arbitrators erred in permitting the judgment of foreclosure to be opened; the defendant therein, having failed to allege or prove, any excuse for not resisting the foreclosure, before the judgment was rendered.

14th. That the arbitrators erred in hearing evidence, particularly, the evidence of Golden, himself; to show, that said

foreclosure was erroneous, or, that sets-off or any other defence, existed against said mortgage.

15th. That the arbitrators, on the rule to show cause why the foreclosure should not be set aside, heard the evidence of Golden himself, and at his own instance; and also heard evidence of grounds for setting aside said foreclosure, other than the ground expressed in the *rule nisi.*

16th. That the arbitrators erred in not dismissing the affidavit of illegality, on the motion of Fowler; a motion based on the insufficiency of the matters alleged in the affidavit.

17th. That the illegality was one of the matters referred; and it is not disposed of, in the award.

18th. That the award is outside of the submission in this; it sets aside and makes void the mortgage on the city lot in Atlanta, and, the notes which the same was given to secure.

The counsel for Fowler, whilst reading these grounds to the Court," "took the occasion to descant at large upon their merits." " One of the counsel for Golden, made his speech against the exceptions, intending to leave the closing speech, to John T. Wilson," (another of his counsel,) " but his honor decided, that Golden had the conclusion, and that he would not hear two counsel in conclusion," and so, he excluded Wilson. To this, Golden excepted.

After the argument of Fowler's counsel, Golden " objected to the exceptions coming up in that shape; urging, that it should come up in the shape of a *rule nisi,* calling on Golden to show cause, if any he had, why the award should not be set aside."

" The Court determined, that the argument should proceed, as, the cause had been brought up and opened in that shape, by plaintiff's counsel, and as, the points, and the course of the argument, would be the same."

To this, Golden excepted.

Afterwards, the Court sustained the sixth ground of exceptions, and, " some other grounds of exception, and not definitely deciding, as to others," and " intimated, that the *rule*

*nisi,* as stated by Golden's counsel, might have been the more regular and usual course, but, that he would allow the counsel to put it in that shape, (for the sake of the record, and to obviate the objections,) and make a motion to set aside the award, which order was granted without argument, as though, the argument had been had on the last, instead of the first, motion—the argument having been regularly gone through with, on all the points; and the Court, upon the suggestion of Mr. Manning, that he had expected to be followed by counsel on the same side, and had therefore, not been so full, allowed him then to resume, and continue, the argument, *ad libitum* in conclusion."

To all of which Golden excepted.

Were any of the grounds good, urged against the motion to make the award the judgment of the Court?

The first was, that the arbitrators held; that they were bound to proceed by the Act of 1856, and permitted Golden to testify for himself.

By the order of submission, the arbitrators were " to have the powers and authority given to arbitrators, under" that act.

The powers given to arbitrators under that act, authorize the arbitrators to examine the parties to the arbitration, as witnesses. The act says, that the parties " snall be competent witnesses," *sec.* 8, *p.* 223. This confers on the arbitrators, the *power* to examine the parties, as witnesses. True, it may also give the parties the *right* to be examined as witness. But it may well be, that a law shall, at the same time, give a power to the Court, and a right to the parties.

Arbitrators, under that act, then, would have had the power to swear Golden, as a witness, in his own behalf. If so, these arbitrators had the power to swear him in his own behalf, for they had the same power which those would have had.

Again : What Golden's testimony was, is not stated. It

may be, therefore, that the testimony was immaterial.   If it was, its admission was of no consequence.

We think that this, the first ground was not sufficient.

The second ground was, that the arbitrators awarded, that Fowler should pay $45, for their services, and Golding nothing.

This part of the award, was separable from the rest, and therefore, if wrong, it was no cause for rejecting the whole award.

The same may be said of the third ground.

The fourth ground was, that the award as Fowler believed and as he charged, was not *executed* by all the arbitrators at the same time, or in each others presence.

The order of submission does not require the award to be in writing.   But even, if it did, there is no law of which we are aware. that says, an award shall be void, unless the writing merely evidencing it, shall be signed by all the arbitrators, at the same time, and, in each others presence. *Little vs. Newton*, 9. *Dowl.*

Besides, the truth of this ground is supported by nothing, but Fowler's mere belief.

The fifth ground was, that the award does not dispose absolutely, of the suits refered, but directs the entry of, "settled" to be made, only on condition, that the several sums awarded against Fowler, are paid.

It was of no consequence whether the suits should ever be entered, settled, or not.   Without any such entry, they were finally disposed of.   Another part of the award, has this comprehensive language; "that all the notes and mortgages, and all other liabilities, be null and void."   All the suits must have been founded on "liabilities," of some sort, if founded on anything.   This, therefore, knocks away the foundation of all the suits, and that gone, there, was no need of an entry of "settled."

The sixth ground was, that the award is outside of the submission in this; that it declares in effect, that all the

notes, mortgages, and all the other liabilities, held by Fowlew, growing out of the sale by him to Golden, of DeKalb land, shall be void, thereby setting aside a contract of the parties, which was not attacked, or put in issue, by any of the pleadings in any of the cases referred.

The Court below held this to be a good ground.

Is it true, that the award is, in this particular, outside of the submission?

The *case* pending in DeKalb, was within the submission. What then was that case?

The bill was framed with a double aspect. The two aspects, however, are, it must be admitted, somewhat indistinct and confused. In one of the two aspects, it is a bill to get rid of the Sheriff's sale to Fowler; in the other, it is a bill to get rid of the original sale; the sale, by Fowler to Golden. The prayer of the bill is, that the Sheriff may be restrained from making a deed to Fowler if he had not made one; if he had made one, that it shall be annulled; that Fowler shall be restrained from trading the purchase notes given to him, by Golden; that these notes shall be delivered up and be cancelled; and that Fowler shall pay Golden, $600, with interest, as the purchase money or damages, sustained by Golden; (doubtless, for the $600 city lot given by Golden to Fowler, in part payment of this DeKalb land.)

A cancellation of the notes and a payment of $600 in place of the city lot, would be equivalent to a nullification of the sale, and a restoration of the parties in *statu quo;* for Fowler was in *possession* by his purchase at Sheriff's sale, and in possession, clothed with the entire interest, both legal and equitable; legal, because, having given only his bond for titles, he had never parted with that; equitable, though he had parted with that by his bond for titles, yet he had got it again, by his purchase at Sheriff's sale; thus passing to him by that sale, all the interest which Golden had in the land.

The stating part of the bill, contains allegations suited to

the part of this prayer, which asks for the nullification of the Sheriff's sale. This is admitted.

But it is said, that there is nothing in the stating part of the bill to authorize the prayer, which asks for the nullificacation of the original sale.

There is this in the stating part of the bill; that Fowler publicly proclaimed at the Sheriff's sale, that he had sold the land to Golden, and had given Golden his bond for titles, but, that Golden had failed to comply with his contract, and the purchase money was unpaid, and that he, Fowler, was then having the land sold, for the purpose of perfecting title in himself again; and, that he then bid off Golden's interest, at one dollar. Fowler, then, desired, to have his land, "again." That is, Fowler himself, wanted to rescind the sale. Golden having violated one of the terms of the sale, this term as to the first payment; and, in consequence of this desire, he was suffered to bid off the land, at the nominal price of one dollar when the land was worth $2,100. This is in the stating part of the bill.

Now, it was the right of Golden to take Fowler at his word, and say, agreed; let us rescind.

And, it may be considered, that he did this, in the prayer for a cancellation of the purchase notes, and for the payment to him of $600. The case might have been such, that it would be more proper, to ask for $600, the price at which, the city lot was rated, when conveyed to Fowler in part payment for the land sold by Fowler to Golden, than to ask for a return of that lot. It might have been the case, that Fowler had put valuable improvements on that lot.

We think, then, that there was enough in the stating part of the bill, to authorize the part of the prayer, which asks for a cancellation of the notes, and the payment of $600 in place of a return of the city lot.

The bill made a part of the *case* pending in DeKalb, referred to the arbitrators.

It follows, that if the arbitrators had annulled the original sale, they would not have gone beyond the submission. Now, that is what they did. They " decreed," that the notes should, " be null and void ;" or if they had passed out of Fowler's hands, that they should be " settled," by him ; and they further " decreed," that Fowler should pay Golden $676. True, this is more than $600; but the overplus is due, it is to be presumed, to the rest of the lot, or, to the account on which Golden's action against Fowler was founded, or, to both.

We think, then, that the arbitrators, in declaring that these notes should be null and void, did *not* go beyond the submission; and therefore, we think, that there is nothing in this, the sixth ground of exception to the award.

What has been said on this ground, sufficiently disposes of the two next grounds, the seventh and eighth. If there is nothing in the sixth, there can be nothing in them.

The ninth ground was, that it cannot be determined in what case, the $676 was to be the judgment. True; and because, it was not the intention, that it should be made the judgment in any case. Nor was there anything requiring, that it should be made the judgment in any case. The award itself adjudged this sum to Golden, and that was a sufficient judgment for the sum.

The tenth ground was, that the award was in the alternative, in some of its most important provisions.

True, but we see no objection to that. The notes were to be null if, still in the hands of Fowler, if they had passed from his hands, he was to pay them, and not Golden. This is all one to Fowler.

We think, that the award may, by a little study, be found to be *intelligible* and sufficiently *definite;* and, therefore, we think, that there is nothing in the eleventh and twelfth grounds.

The thirteenth ground was, that the arbitrators permitted the judgment of foreclosure to be opened.

[2.] In *Coate on Mortgages*, 492, it is said, that " equity is ready to receive the excuses of the mortgagor, not only for the purpose of giving him time to procure the money previously to the foreclosure, but also for the purpose of opening the foreclosure, even after many year's quiet possession by the mortgagee, under an absolute decree of foreclosure, confirmed, signed, and enrolled." And see 495 *et seq.*, and the cases cited, especially, *Edwards vs. Cunliffe*, 1 *Madd.* 287 ; and *Ford vs. Wastell*, 6 *Hare*, 229.

There may have been very good reasons, why Golden did not resist the foreclosure, and these may have been shown to the arbitrators.

The Court itself, had granted a *rule nisi*, opening the foreclosure, in which rule, it was recited, that *it appeared*, that Golden had equitable sets-off against the mortgage. And it must be true, that it also appeared to the Court, that there existed some reason which seemed to the Court sufficient, to require the foreclosure to be opened to let in those sets-off, otherwise, the Court would not have granted the *rule nisi*. We must presume, that this same reason, whatever it was, was made appear to the arbitrators.

We see nothing then in this, the thirteenth ground.

The fourteenth ground is sufficiently disposed of, by what has just been said, in reference to the thirteenth, and by what was said, in reference to the first.

The fifteenth ground was, that the arbitrators, on the rule to show cause why the foreclosure should not be set aside, heard the evidence of Golden himself, and at his own instance ; and also heard evidence of grounds for setting aside the foreclosure, other than, the ground expressed in the *rule nisi.*

The first part of this ground has been disposed of, in the disposition made of the first ground.

As to the second part, it is sufficient to say of it : first that it does not appear, what these other grounds were, nor, what was the evidence offered in their support ; secondly, that it

is not even alleged, that the arbitrators were influenced by this evidence, and allowed the grounds.

The sixteenth ground was, that the arbitrators overruled the motion of Fowler, to dismiss the affidavit of illegality ; the ground of the motion being, the legal insufficiency of the matters alleged in the affidavit.

This action of the arbitrators, whether right or wrong, was a matter of no importance. If the affidavit of illegality, had been dismissed, still, the *rule nisi* would have remained, and in that rule, lay every thing that was in the affidavit.

The arbitrators in disposing of, what they did dispose of, disposed of the affidavit of illegality. Therefore, there is nothing in the seventeenth ground.

The eighteenth ground was, that the award *is* outside of of the submission in this, that it sets aside the mortgage on the city lot in Atlanta, and the note which it was given to secure.

If there were equitable sets-off proper to be allowed against the mortgage, they ought, by the submission, to have been allowed against it. If they had been allowed against it, the effect would have been to satisfy the mortgage, and the note to secure which, it was given, and thus, to make them both null and void.

The arbitrators then, would not have gone beyond the submission, if they had said, that the mortgage and note were to be considered as satisfied by the equitable sets-off. What they did say, was, that the mortgage and note should be " null and void," and " be cancelled to each party." One meaning of, to cancel, is, to annul. Taking it to have that meaning here, there is nothing in the expression of the arbitrators, inconsistent with the supposition, that they meant the equitable sets-off, to be the means or cause, by which, the mortgage and note, were to be " null and void ;" " cancelled ;" annulled. And if they meant this, they did not go beyond the submission.

We see nothing then in this, the eighteenth ground.

We, think then, that the Court erred, in overruling the motion to have the award, made the judgement of the Court.

It becomes unnecessary to consider the remaining points, in the case. They relate to form, not substance; and when the points relating to substance, have been decided in favor of a party, it is enough.

Judgment reversed.