(74 App. Div. 461.)

## In re AKERS' WILL.

(Supreme Court, Appellate Division, First Department.    July 8, 1902.)

1. HOLOGRAPHIC WILL—PUBLICATION.
   A statement by the maker of a holographic will which has been signed by him, to witnesses thereof, one of whom knows testator's signature, that it is his will, and requesting their signatures as witnesses, is a sufficient acknowledgment and publication, under 2 Rev. St. (9th Ed.) p. 1877, requiring the signature of testator to be in the presence of the attesting witnesses, or that he acknowledge the same to each witness.

2. WILLS—ATTESTATION.
   A will witnessed by persons signing their names after testator's name, and under the word "Witnesses," is not insufficiently witnessed, in the absence of an attestation clause.

3. SAME—REVOCATION.
   Under 2 Rev. St. (9th Ed.) c. 6, art. 3, § 42, providing that no written will shall be revoked, except by writing executed with the formalities required for a will, or unless it be canceled or destroyed with intent to revoke the same, a writing in testator's handwriting, and signed by him, but not witnessed, on the margin and back of a will, which is not defaced by it, stating that the will is revoked, does not constitute a revocation thereof.

Appeal from surrogate's court, New York county.

Application for the probate of the will of Frederick Akers, deceased. From a decree admitting the will to probate, George H. Jeffries appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

J. Aspinwall Hodge, Jr., for appellant.
J. Mayhew Wainwright and John Vincent, for respondent.

HATCH, J.   The paper propounded for probate is written upon pages 1, 3, and 4 of a sheet of legal-cap paper.   The reverse side (being page 2) of the first sheet is blank.   The instrument is a holograph; it being conceded that it is entirely in the handwriting of the deceased, except the signature of the three subscribing witnesses, to which are attached their respective places of residence. The testator subscribed his name to the will prior to the witnessing of the will, but not in the presence of the witnesses.   On the same line, to the left of the signature of the first witness, appears in the handwriting of the testator the word "Witness."   There is no formal attestation clause attached to the will, nor is it otherwise witnessed, except as above stated.   Two only of the subscribing witnesses testified in the proceeding for probate, and neither of these witnesses saw the testator affix his signature to the will; but one testified that the signature of the testator was signed to the will at the time he (the witness) signed it, and the testator stated to both that it was his will, and requested them to sign as witnesses, which they each did in the presence of the testator and in the presence of each other. The third subscribing witness was not present at the time of the execution of the will by the testator and the two witnesses who

were sworn, nor does it appear why he was not called as a witness.
Attached to the will, and written on the first and third pages of
another sheet of legal-cap paper, also written in the handwriting of
the testator, is what was evidently intended to be a codicil. It was
conceded, however, that it was not properly executed, and was not,
therefore, offered for probate. Upon the first page of the will was
a margin, separated from the body of the sheet by the usual mar-
ginal line which is ruled upon legal-cap paper. To the left of the
writing of the body of the will on this blank marginal space, and
running lengthwise of the first page, were written in the handwriting
of the testator the words, "This will and codicil is revoked, Jany.
14/96," and under this line was the signature of the testator, "Fredk
Akers." None of the words of this sentence and signature were
written across, nor did they come in contact with, any of the writ-
ing of the will, except that a small portion of the lower extremities
of some of the letters in the signature "Fredk" crossed three of the
lower extremities of the letters on three lines. These words and let-
ters, however, are perfect in themselves, and are not in the slightest
degree obliterated. On the left-hand margin of the second page
of what purported to be the codicil, but in no wise crossing or can-
celing the writing thereon, appeared the following:

"This codicil and will is revoked.
            "Jany. 14/96.
            "Fredk Akers."

On the back of the first page of what purported to be the codicil
were written the words:

"Revoked Jany 14th 1896
            "Fredk Akers."

This writing by which the revocation was attempted is all in the
handwriting of the testator. The learned surrogate decided that
the will was duly executed as and for the last will and testament of
the testator; that he had not revoked the same; and therefore he
admitted the same to probate. From the decree of the surrogate
entered upon such decision, this appeal is taken.

The appellant upon this appeal raises two questions: First, that
there was failure to prove either the acknowledgment of the testa-
tor's signature to the will, or that he signed it in the presence of
both of the witnesses, and that it was never properly executed; and,
second, that the will was canceled by the testator after its attempted
execution, with the intent and for the purpose of revoking it, and
that such intent and purpose were, in legal effect, accomplished.
The statute provides (2 Rev. St. [9th Ed.] p. 1877) that every last
will and testament shall be executed and attested in the following
manner:

First. "It shall be subscribed by the testator at the end of the will."
Second. "Such subscription shall be made by the testator, in the presence of
each of the attesting witnesses, or shall be acknowledged by him to have
been by him so made to each of the attesting witnesses." Third. "The
testator, at the time of making such subscription, or at the time of acknowl-
edging the same, shall declare the instrument so subscribed to be his last

will and testament." Fourth. "There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator."

The signature at the end of the will was in the handwriting of the testator. It was therefore subscribed by him. He requested the witnesses to witness the will, saying that it was his will, and that he was going South, and asked them to sign the same as witnesses. The witness Bunger saw the signature of the testator upon the will at the time he signed it as a witness, and both witnesses signed it in the presence of each other. The witness De Winters states that the testator requested him to sign his will, but he was not able to state whether he saw the signature of the testator at the time or not. This constituted a substantial compliance with subdivision 2 of the statute, and was a subscription, publication, and acknowledgment, within the meaning of the statute. The rule in respect to holographic wills, as to the manner and method of publication, is not so close and severe as where the will is drawn and executed under the direction of an experienced scrivener. A substantial compliance with the statute is sufficient. In re Beckett, 103 N. Y. 167, 8 N. E. 506. Where the testator produces the paper subscribed by him, although such subscription is not made in the presence of the witnesses, but he declares it to be his last will and testament, and requests the witnesses to attest it, it is sufficient as an acknowledgment of its subscription. Baskin v. Baskin, 36 N. Y. 416; In re Hunt's Will, 110 N. Y. 278, 18 N. E. 106. In the present case we have the facts that the subscription was actually made by the testator; that one of the witnesses saw and knew it; that the testator declared it to be his will; that he requested the witnesses to witness it as such. This, within the rule of the above authorities, constituted a substantial compliance with the statute, as to subscription, acknowledgment, and publication. It was not essential to the validity of the will that an attestation clause should be attached thereto, and a will witnessed in the form which obtained in this case is sufficient. In re Philips, 98 N. Y. 267; In re Hunt's Will, 42 Hun, 434. This will, therefore, is to be regarded as the last will and testament of the testator, and force is to be given to it as such, unless the attempted revocation of the same is sufficient to accomplish that purpose.

Section 42, pt. 2, c. 6, art. 3, 2 Rev. St. (9th Ed.) p. 1878, makes provision for the revocation and cancellation of written wills in the following language:

"No will in writing, * * * nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, cancelled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the said testator and the fact of such injury or destruction, shall be proved by at least two witnesses."

This statute, as is evident from its language, provides three methods by which a will may be revoked: First, by writing; second, by

destruction in some one of the forms named in the statute; and, third, by the act of another person by the direction of the testator. In the present case the testator has evidently sought to revoke his will by writing, as he has done no act except to express his intention upon the margin of the paper upon which the will was written, as hereinbefore stated. It is clear that this attempted revocation is not in the form, nor is it evidenced, as required by the statute. In order to revoke by writing, it must be by some other will or some other writing declaring the revocation, and executed with the same formality as is required by the statute for the original execution of the will. It needs no argument to show that the writing which the testator made fails in compliance with this provision of the statute. If, therefore, the statutory provision is mandatory, there has been an evident failure to revoke this will by writing. That it is so mandatory is decided in many cases. In Lovell v. Quitman, 88 N. Y. 377, 42 Am. Rep. 254, the court, speaking through Judge Danforth, of this provision of the statute said:

"Now, by the first phrase, the repentant testator is required to write out the proposed alteration, select his witnesses, and make to them an acknowledgment or declaration that the act is his; and so far the language permits but one inference or construction,—that that act becomes effectual whether it relates to the whole will or some portion only of the will."

A like doctrine has been held in other jurisdictions. In re Ladd's Will, 60 Wis. 187, 18 N. W. 734, 50 Am. Rep. 355. The statute there under consideration was in all substantial respects the same as the statute of this state. The opinion therein contains an exhaustive discussion of the whole subject, and cites and reviews nearly all of the authorities, both in this country and in England, bearing thereon. Howard v. Hunter (Ga.) 41 S. E. 638. In the latter case the supreme court of Georgia recently and exhaustively examined the subject and reached the same conclusion.

It is evident, therefore, that this will was not revoked by the writing indorsed thereon, as it falls far short of making compliance with the statute governing the subject. It is claimed, however, that the act operates as a revocation by the second method provided for in the statute. The will itself is not burnt, torn, obliterated, or destroyed. Consequently it must be that the act of the testator had the effect of canceling the same, in order to make application of this provision of the statute. An examination of the will, however, does not disclose the slightest mark upon the body of the will which in any form cancels or obliterates it in any part. On the contrary, it is quite evident that the surname of the testator is placed slightly above the line of the given name, and evidently for the purpose of avoiding contact with the words of the will, and the whole writing has not canceled a single letter. There can be no such thing as a cancellation of an instrument, either as a physical fact or as a legal inference, unless the instrument itself is in some form defaced or obliterated. Such is the express definition of the term in legal significance. 1 Burrill, Law Dict. p. 177. It has been held in several cases that even cancellation and obliteration of some parts of a will do not have the effect of destroying it as a whole. Thus in Jackson v. Holloway, 7 Johns. 394,

the testator made a will devising certain land of which he was possessed to his four sons, and after its execution, having become possessed of other land, he altered his will by erasures and interlineations so as to extend the devise of the land to all of which he should die seised, and indorsed a memorandum upon the will to that effect. This memorandum was improperly attested, and the court held that there was failure to devise the subsequently acquired land, but that the erasures and interlineations did not have the effect of destroying the will, and it remained a good instrument as to the land first devised; as to the land subsequently acquired, it descended to the heirs at law. To the same effect is Quinn v. Quinn, 1 Thomp. & C. 437; In re Potter (Sur.) 12 N. Y. Supp. 105. These decisions proceeded upon the ground that there must be not only the physical act of cancellation in some one of the forms mentioned in the statute, but that the act must be accompanied by the intent to cancel and destroy the instrument as a will. It must follow as a necessary corollary that the intent to cancel or revoke is insufficient to accomplish such a result unless it is accompanied by the physical act working it. In no case which has been called to our attention has a will been held to be canceled unless there was some physical act of cancellation. The mere writing of an intent to revoke is insufficient, even though it may indicate an intent to cancel, where it is unaccompanied by any physical act of cancellation. Such is the doctrine announced in Warner v. Warner's Estate, 37 Vt. 356. That case carried the doctrine of cancellation beyond that of any other reported case, and has been several times criticised as being unsound in law. In re Ladd's Will, supra; Howard v. Hunter, supra; Redf. Wills (4th Ed.) 318. But giving full force to the doctrine of the Vermont case, it falls short of establishing a cancellation upon the facts now before us. Therein the testator not only wrote upon the will: "This will is hereby canceled and annulled. In full this 15th day of March in the year 1859." But he also erased from the will the words, "In testimony whereof, I here, I have;" and he also wrote on the outside of the fourth page of the will, "Canceled and is null and void. I. Warner." There was therefore in that case absolute erasure of some of the words of the will, and in two places a statement of cancellation signed by the testator. Here we have no obliteration whatever, and nothing except the writing upon the margin of the will and the purported codicil. In all of the cases to which our attention has been called there has been a physical cancellation of some of the words of the will, accompanied by an intent to cancel. In re Clark's Will, 1 Tuck. 445; In re Philps' Will (Sup.) 19 N. Y. Supp. 13; Dan v. Brown, 4 Cow. 483, 15 Am. Dec. 395. The great weight of authority is to the effect that a mere writing upon a will, which does not in any wise physically obliterate or cancel the same, is insufficient to work a destruction of the will by cancellation, even though the writing may express an intention to revoke and cancel. Where a will is sought to be revoked solely by writing, it must conform in that respect to the requirement of the statute; and, failing in that, it does not revoke the will, even though there may be a clear intention so to do. In the present case the testator attempted to revoke his will by written words. His act

was clearly not in compliance with the statutory requirements, and therefore it failed of effect.

It follows that the decree of the surrogate admitting this will to probate was correct. It should therefore be affirmed, with costs to the respondent payable out of the estate. ·

O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ., concur. VAN BRUNT, P. J., concurs in result.