to limit the hours of labor of bakers (and bakers may be men or women) the United States Supreme Court says:

"They are in no sense wards of the state. Viewed in the light of a purely labor law, with no reference whatever to the question of health, we think that a law like the one before us involves neither the safety, the morals nor the welfare of the public, and that the interest of the public is not in the slightest degree affected by such an act. * * * It is a question of which two powers or rights shall prevail—the power of the state to legislate or the right of the individual to liberty of person and freedom of contract. The mere assertion that the subject relates, though but in a remote degree to the public health, does not necessarily render the enactment valid." Lochner v. New York 198 U. S. 57, 25 Sup. Ct. 543 (49 L. Ed. 937).

The statute which would prevent Katie Mead from working in a factory after 9 o'clock at night, under the best sanitary conditions, offers no prohibition against her doing the same work in a hall bedroom in a tenement house, under conditions more detrimental to her health. She may work at her usual employment all night if she so pleases, and the state does not interfere to prevent possible injury to her possible children who may be its future citizens. A dressmaker or milliner has a factory within the meaning of the law if he or she have but one employé. The employer, even though she be a woman, may work when and so long as it pleases her. The single employé, on the contrary, if she be a woman, may not work after 9 o'clock at night nor before 6 o'clock in the morning. Why this distinction between two possible mothers of future citizens if this be simply a health regulation? The relation of the subject of this statute to the public health and common welfare seems altogether too remote to sustain it as a proper exercise by the state of its police power.

We can arrive at no other conclusion than that there has been in this enactment an unwarranted invasion of the constitutional rights of individual liberty and property; that for this reason the information of the district attorney herein does not state facts constituting a crime.

The motion in arrest of judgment is granted and the defendant discharged. All concur.

---

(50 Misc. Rep. 70.)

## In re MILLER'S ESTATE.

(Surrogate's Court, Cattaraugus County. March, 1906.)

WILL—REVOCATION—EVIDENCE—INDORSEMENT ON WILL.

Under 2 Rev. St. (1st Ed.) p. 64, pt. 2, c. 6, tit. 1, § 42, providing that a will can only be revoked by another will in writing or some other writing, declaring such revocation and executed with the same formalities as a will, unless such will is destroyed by the testator or by another person in his presence by his direction, which fact must appear by evidence, a will cannot be legally revoked by an indorsement on its back in writing, signed by the testator, to the effect that it is revoked.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 446.]

In the matter of the estate of Luman H. Miller, deceased. Proceedings for the revocation of letters of administration. Letters revoked.

Charles D. Van Aernam, for petitioner.

Reginald F. Pelton, for administrator.

DAVIE, S.   On January 6, 1906, letters of administration upon the estate of the decedent were issued to Orrin Miller.   Subsequently a petition was filed by Cora Starks, asking for a revocation of such letters and alleging that the decedent left a valid will in which she was named as legatee.   Upon the return of the citation issued upon such petition the following facts were established:.   In the month of March, 1881, the decedent made and executed in due form his last will and testament, in which he named a sister as legatee and as the executrix thereof.   This sister died in 1891.   On the 31st day of December, 1901, the testator indorsed upon the back of the will a statement in writing to the effect that such will was revoked, and dated and signed the same.   No authentication of such indorsement in the manner prescribed by the statute was attempted, and the only question now involved is whether or not such unauthenticated writing constituted a legal revocation of the will.

The statute relating to revocation of wills provides as follows:

"No will in writing, except in the cases hereinafter mentioned, or any part thereof, shall be revoked or altered otherwise than by some other will in writing or some other writing of the testator declaring such revocation or alteration and executed with the same formalities with which a will itself is required by law to be executed, unless such will be burnt, torn, cancelled, obliterated or destroyed with the intent and for the purpose of revoking the same by the testator himself, or by another person in his presence by his direction and consent; and when so done by another person the direction and consent of the testator and the fact of such injury or destruction shall be proved by at least two witnesses."   2 Rev. St. (1st Ed.) p. 64, pt. 2, c. 6, tit. 1, § 42.

In view of the distinct and unequivocal phraseology of the statute, I should, without hesitation or comment, have granted the relief sought by the petition; but the counsel for the administrator cites and to some extent relies upon Warner v. Warner, 37 Vt. 356, and Witter v. Mott, 2 Conn. 67, as authorities in support of his contention that this will was effectually revoked.   The statutes in the state of Vermont relating to the execution and revocation of wills are the same as ours.   In Warner v. Warner the court held that the following words: "This will is hereby canceled and annulled in full this 15th day of March, 1859"— without authentication, constituted legal revocation.   In the opinion the court says:

"If the document should be entirely burned up, entirely obliterated, or torn into scraps, or covered with closely written cross-lines there would be no doubt as to the intent of the testator; but it has been held that it is not necessary to go to that extent in any of the modes to answer the requirements of the statute, and that the slightest degree of either mode, provided that it appears, even by resort to other evidence that the act was done with the intent to have it constitute a revocation, is effectual as such.   Accordingly it has been held that the slightest burning or tearing of the material on which the will was written, even though none of the script should be destroyed or effaced, that the erasure of a single word, or the drawing of a straight line across the face of the script, partaking of the character of the act prescribed by the statute, if it appears to have been done in the accomplishment of such act, effectuates a revocation."

Substantially the same conclusion is reached in Witter v. Mott, supra.   If these authorities are to be followed and applied in this state, then the will in question was revoked.

The statute prescribes two distinct methods for the revocation of existing wills: First, by a writing for that purpose duly made and authenticated; and, second, by certain acts, viz., burning, tearing, canceling, obliterating, or destroying. A writing made animo revocandi is easily susceptible of statutory authentication. Such authentication is emphatically and arbitrarily demanded by the statute. The other specified acts are from their very nature impossible of authentication. Then the question arises, are the courts at liberty to hold that an attempted revocation by writing, ineffectual under the first provision of the statute for want of authentication, can be regarded as an act sufficient under the later provisions to effect revocation?

In order to constitute legal revocation of an existing will three things must concur: First, testamentary capacity; second, an intention to revoke; and, third, carrying such intention into effect in the manner required by the statute. A person who has not testamentary capacity cannot revoke a will in any maner whatever. He can neither make nor unmake a will. A will legally made stands until legally revoked. It cannot be revoked by an act of destruction unless the act is done with an intention of revoking, and one not possessing testamentary capacity cannot have an intention to revoke. Rich v. Gilkey, 73 Me. 595. But, where a will once properly executed is subsequently found bearing marks of destruction, it will be presumed, in absence of affirmative proof of want of testamentary capacity, that the testator was competent to revoke the same. The intention, however, must be effectuated. The act and intention to revoke must coincide and accompany each other. The intention, alone, however urgent and fixed, not accompanied by or resulting in an act of destruction or some act of revocation mentioned in the statute, will not revoke. Underhill, Law of Wills, §§ 223, 224.

The will, in his case, was neither "burnt," "tori," "obliterated," or "destroyed." Was it "canceled" within the meaning of the statute? Various definitions of the term "cancellation" are found in text-books and decisions. For illustration:

Webster's International Dictionary: "Cancellation; to revoke or recall."

Blackstone: "A deed may be avoided by delivering it up to be canceled—that is, to have lines drawn through it in the form of lattice work or cancelli—though the phrase is now used figuratively for any matter of obliterating or defacing it."

Burrill's Law Dictionary:"Canceling; the defacing or obliterating a deed, will, or other instrument so as to destroy its legal effect."

Bouvier's Law Dictionary: "Cancellation; its general acceptance is the the act of crossing a writing, and it is used sometimes to signify the manual operation of tearing or destroying the instrument itself. Canceling a will animo revocandi is a revocation of it, and it is unnecessary to show a complete destruction or obliteration."

These definitions, as well as the phraseology of the statute, clearly show that the term "canceled" as used in conjunction with the words "burnt," etc., indicate an act in contradistinction to a writing. A written revocation must be authenticated. Any other act of revocation need not and cannot be authenticated. Not a word of this will was erased, crossed out, marked over, or in any manner obliterated; and to hold that the unauthenticated indorsement upon the back of the instrument can

operate as a cancellation is not only paradoxical, but its effect would also be the absolute nullification of that portion of the statute which requires written revocations to be authenticated.

Again, the legal presumption is that the testator understood the requirements of the statute. The fact of his making the written indorsement upon the will is probably evidence of an existing design or intention of revoking it. Retaining the will with such indorsement upon it for years thereafter, without having consummated such design by adding the proper authentication, may, with the same degree of reason, be urged as evidence that the testator had abandoned his design to revoke the will.

I am unable to reach any other conclusion than that of holding the will in question to have been in full force and effect at the date of decedent's death, and a decree will therefore be entered revoking the letters of administration and requiring the production of the will for probate.

Decreed accordingly.