## In the Matter of the Application for the Probate of the Last Will and Testament of GEORGE W. PARSONS, Deceased.

Surrogate's Court, Westchester County, June, 1922.

**Wills — words of revocation written across face of will and signed by testator revoke the will — Decedent Estate Law, § 34.**

The act of a testator in writing diagonally across the face of his will words of revocation, followed by his signature, obliterates and cancels the will and expresses his intent to annul it.

After the death of testator his holographic will, executed nearly fifty years before, was found in his safe deposit box with the words "Will revoked" and "This will revoked" written diagonally across the face of the will, in each instance followed by his name in his handwriting, with lines beneath his signatures. *Held*, that no extrinsic evidence of the transaction having been offered except that the will was in the custody of the testator at his death, proof of his intent to revoke the will must be derived from the instrument itself.

The finding of the will in the testator's safe deposit box with the written revocation raises the presumption that he canceled his will with intent to revoke it, *animo revocandi*.

Upon the facts as presented it must be held that the will was legally revoked under section 34 of the Decedent Estate Law, and probate will be denied.

PROCEEDING to probate a will.

*Alexander & Green* (*Daniel Whitford,* of counsel), for petitioner.

*Zabriskie, Sage, Kerr & Gray* (*George Zabriskie* and *George Gray Zabriskie,* of counsel), for Protestant Episcopal Bishop of the Diocese of Long Island.

*John G. Daniel* (*James A. O'Gorman, George Gordon Battle* and *Lanman Crosby,* of counsel), for contestants.

SLATER, S. The submission of a will for probate to two jurisdictions within the state and opinions of two surrogates upon the identical question involved, is, to say the least, unusual. The litigated question of the instant case has been written upon and is reported in *Matter of Parsons,* 117 Misc. Rep. 753. The will of the decedent was offered for probate in New York county. The question raised related to its revocation. The will was probated there March 29, 1922. An appeal was taken from the decree of probate. On May 22, 1922, however, the decree of probate was vacated and the proceedings dismissed for lack of jurisdiction.

The decedent, a resident of Hoboken, N. J., died in the county of Westchester July 12, 1921. In this proceeding a legatee, the Protestant Episcopal Bishop of the Diocese of Long Island, is the petitioner. The heirs at law, a nephew and a niece, are the contestants claiming that the will was revoked by cancellation by the testator in his lifetime. One of the learned surrogates of New York county was of the opinion, reported *supra*, that the will had not been legally revoked. The will is dated March 1, 1873, more than forty-eight years ago. It is written upon one sheet of business paper with the subscription of the decedent thereon. Upon the second sheet of paper is written the attestation clause and the signatures and addresses of the three witnesses. Upon the lower part of the second sheet there is written a codicil. It is subscribed by the decedent, but not witnessed. The document is holographic. The proof before this court was to the effect that the witnesses to the will were dead; that the testifying witnesses were acquainted with their handwriting and likewise with the testator's handwriting; that the paper writing was found in the safe deposit box of the decedent after his death. Lengthwise, running from the bottom toward the top of the first sheet, across the lower portion thereof and across the face of the written will itself are these words: " Will revoked Geo. W. Parsons," with lines beneath the signature. Running in the same manner across the upper portion of the first sheet and across the face of the written will are these words: " This will is hereby revoked Geo. W. Parsons," with lines beneath this signature also. All the parties to the proceeding herein have stipulated that the words written across the face of the paper writing, and the signatures of the decedent as indicated are in the handwriting of the decedent. No question of fraud or tampering enters here. There was no extrinsic evidence offered of the transaction, except that the will was in the custody of the decedent at his death. Therefore, proof of intent to revoke the will must be derived from the paper itself. The question involved is: Did the decedent revoke his will by such cancellation, or obliteration, as is required by our law? The court is confronted with the opinion of the learned surrogate of New York county holding that the testator did not make an effectual revocation. To this ruling this court respectfully dissents for the reasons given herein.

Section 34 of the Decedent Estate Law sets forth how a will may be revoked: (1) By some other will in writing; (2) by some other writing of the testator declaring such revocation, executed with the same formalities with which the will itself is required by law to be executed; (3) burning; (4) tearing; (5) canceling; (6) obliterating, and (7) destroying, with the intention and for the

purpose of revoking the same by the testator himself, or by another person in his presence by his direction and consent, and when done by another person the fact of such injury shall be proved by at least two witnesses.

To revoke a will it is necessary not only that there should be an intent to revoke the will, but the intent must be consummated by some of the acts specified in the statute, or by the execution of an instrument declaring such revocation. To be effective it must be made pursuant to the statute. *Matter of Evans*, 113 App. Div. 373. In *Matter of McGill*, 229 N. Y. 405, 411, the court said with reference to a direction to revoke a will: " The difficulty with the appellant's position is that the paper writing does not itself *declare the revocation*. It does not declare an intention to revoke * * *." In the instant case words are used which declare the intention. It is not within the legitimate power of the court to dispense with the requirements of statutes in the execution or revocation of wills. As the written words are not executed with formality, we do not come within the 2d subdivision of section 34, but do fall within the terms of the 5th and 6th subdivisions thereof, by canceling or obliterating. Roget's Thesaurus says words of cancellation and obliteration are synonymous, and mean the same as deletion, expunge, render illegible, draw the pen through. To cancel is to annul. *Golden* v. *Fowler*, 26 Ga. 451. Revocation is an act of the mind which can be demonstrated by some outward and physical sign. *Dan* v. *Brown*, 4 Cow. 483, 490.

The statute was drawn to protect testators, and the undoing of an act so formal as the making of a last will and testament might well be formal. The first two paragraphs of the law call for written formality, but as to the other modes the revocation is provided by acts themselves, such as burning, tearing, canceling, obliterating or destroying, with the intent and for the purpose of revoking the same by the testator himself, without written formality. These ways have been a common mode of destroying the validity of wills (*Lovell* v. *Quitman*, 88 N. Y. 377), and the legislature has seen fit to make the distinction between formal acts and conventional acts.

The paper writing was canceled, defaced and obliterated when the testator wrote the words of revocation thereon, bringing it well within the dictum in *Matter of Akers*, 74 App. Div. 461, 466; affd., 173 N. Y. 620, and well within the definition of cancellation as the act of crossing out a writing, the manual operation of tearing or destroying a written instrument. Bouvier L. Dict. (3d revision) 416. It is the court's opinion that the words used in *Matter of Akers*, " The great weight of authority is to the effect that a mere writing

upon a will which does not in any wise physically obliterate, or cancel the same is insufficient to work a destruction of the will by cancellation, even though the writing may express an intention to revoke and cancel," were meant to refer only to the particular facts of that case. The words of revocation in *Matter of Akers* were on a *margin* of the paper writing and not *across the face* of the will. When words of revocation with the signature are written diagonally across the face of the words of the will, it obliterates them, it cancels them, and expresses an intention to annul them. *Matter of Akers* resembles *Matter of Miller*, 50 Misc. Rep. 70, where an indorsement indicating words of revocation was upon the back of the will. In *Matter of Miller* the court declined to follow *Warner* v. *Warner*, 37 Vt. 356, and *Witter* v. *Mott*, 2 Conn. 67, as being unsound in law. The decisions upon the revocation of wills by act of cancellation or obliteration are divided into two classes: (1) Those that deal with words of revocation written upon some portion of the paper writing other than across the written words of the will, and (2) the other class where the words of revocation are actually written across the written words of the paper writing itself. In the first class is found *Howard* v. *Hunter*, 115 Ga. 357, where the court says: " In order for an obliteration, or cancellation to be effective as a revocation, it is necessary that the obliteration or cancellation should be upon the will itself, and be of such a character as to indicate clearly that it is the intention of the testator that the paper should be no longer operative as a will." This ruling was followed in *Oetjen* v. *Oetjen*, 115 Ga. 1004; *Matter of Shelton*, 143 N. C. 218; *Matter of Ladd*, 60 Wis. 187; *Dowling* v. *Gilliland*, 286 Ill. 530 (1919). In the last case the will consisted of a single sheet of paper. Written on the back were words of revocation, and written between the date and the attestation clause were the words " Not any good " with the date in the handwriting of the decedent. No words of the will were stricken out by the notation and the ruling therein followed that in *Matter of Akers, supra.* The court employs these words: " Where such notation does not *in any way obliterate the writing* of the will, it cannot be said to cancel, and therefore such notation could only be held effective as a revocation of the will as a writing. As this notation is unsigned and unattested it does not comply   *   *   *."

In the second class there are no cases in the Court of Appeals upon this question. In this jurisdiction we have the opinion of former Surrogate Ketcham in *Matter of Barnes*, 76 Misc. Rep. 382, and the court is disposed to follow the reasoning set forth therein as the law upon the facts in the instant case. That case was decided upon nearly identical facts as we have presented here.

Surrogate's Court, Westchester County, June, 1922.     [Vol. 119

In *Glass* v. *Scott*, 14 Colo. App. 377, a line was drawn through the signature and across the signature. The court held it was such an obliteration as amounts to a revocation, although the name was still legible. The court in this case employs these words: " It has been adjudged that this cancellation or obliteration may be effected by words written across the instrument as ' obliterated ' or ' canceled.' * * * Any act of this sort is effectual for the reason that it puts the instrument in condition whereby its invalidity appears on its face the moment it is produced." In *Noesen* v. *Erkenswick*, 298 Ill. 231 (June, 1921), words of cancellation were written across the face of the will and signed by the testator. The court employs these words: " If a cancellation could be made by any writing across the face of a will, this will was revoked. * * * Of course, a will may be canceled by erasing its provisions or rendering them illegible, which would amount to the destruction of the will, but to cancel does not necessarily mean that. It does mean to disannul, to nullify and declare null and void the instrument, * * *. It would be going far beyond the statute to say that a will is not cancelled unless the words are erased or obliterated so that the nature of the will before cancellation, or its provisions cannot be discovered." *Woodfill* v. *Patton*, 76 Ind. 575. In *Evans Appeal*, 58 Penn. St. 238, the will was canceled by an act done to the will. Lines were drawn across part of the will and through the signature. The court held that such acts stamp upon it an intention that it should have no effect. Obliteration in the will is not confined to effacing letters so they cannot be read. A line drawn through writing is obliteration, though it may leave it as legible as before. The words burning, canceling, obliterating and destroying are used in their popular sense. Cancellation of a will means any act done which in common understanding is regarded as cancellation when done to any other instrument. It must be an act done to the will itself, and on the will itself, by words which manifest an intent to annul it.

The following cases in this state deal with the question of revocation: *Matter of Alger*, 38 Misc. Rep. 143; *Matter of Van Woert*, 71 id. 372; *Matter of Philps*, 19 N. Y. Supp. 13; *Matter of Clark*, 1 Tuck. 445; *Matter of Brookman*, 11 Misc. Rep. 675; *Matter of Miller*, 51 id. 156. In a memorandum opinion in *Matter of Schweizer*, N. Y. L. J. February 28, 1912, Surrogate Fowler said: " The paper propounded as a will being last in the testator's own custody and at his death being found with the seal detached, the testator's subscription cancelled, the names of the witnesses erased, and the words ' I cancel this will for good reasons ' underwritten in testator's own hand, must be taken to have been revoked in his lifetime by

testator himself.  Cancellation and destruction of the will by testator *animo revocandi* has been made out and probate must- be refused."  A valuable note upon this interesting question is found in the Yale Law Journal, volume 31, No. 8, page 892, June, 1922.

The legislature meant something by the word " cancel."  I can visualize nothing more certain of a person's intent than his actual words to revoke and his signature written across the face of a paper writing.  His very words manifest an intent to annul it. The act conveyed his mind to the paper as provided by law, and such an act is a kind of revocation recognized by the legislature.  Cancellation does not require a signature under the statute, but in the instant case a signature was added.

The law does not declare what shall amount to cancellation. Obliteration is not meant as nothing short of effacing the letters of a will so completely that they cannot be read.  A line drawn through a writing is doubtless obliteration, though it may leave it as legible as it was before.  Obliteration is not annihilation, but we must have both an act and intent concurring.  The fact that the testator used the word " revoke" is of importance.  It is the intent that governs and if that is clear from the words that are used, the act itself will satisfy the law.  The burden of proof is upon the party asserting revocation, but no testimony is present, and the intention must come from the paper writing itself.  The testator performed an act when he wrote upon the will itself the word " revoke," which manifests an intention to annul it.  Such an act is recognized by the legislature as a thing to be done to the face of the paper upon which the will is written.  It indicates a preservation of the paper and a statement of the fact that it has ceased to be operative.  The act, the words, the signature, exhibit the testator's intent to cancel, obliterate and annul.  The finding of the will in the testator's safe deposit box with its written words of revocation raised the presumption that the cancellation was done by him with the intention to revoke it *animo revocandi*.  *Matter of Clark*, 1 Tuck. 445; *Matter of Hopkins*, 172 N. Y. 360, 363. Where a will after the same has been canceled is preserved, and is not destroyed, in the absence of facts of some kind to show that others had an interest in or opportunity to cancel the instrument, it will furnish the *best* evidence as to the intention of the maker thereof to destroy its force and effect.  *Matter of Philps, supra; Collyer* v. *Collyer*, 110 N. Y. 481.

Intention is often inferred in the first instance from the character of the act done.  Where a will is found among the testator's effects and it is canceled or obliterated, the *prima facie* presumption is that testator made the cancellation or obliteration and that it

was done *animo revocandi,* but where it did not come from his custody, there is no presumption that he revoked it.   40 Cyc. 1280. In *Matter of Rowe,* 165 N. Y. Supp. 1064, the will was rendered fragmentary — torn in two fragments — but no evidence was presented as to the person tearing the will.   In such a state of facts there is no presumption of *animo revocandi* by the testator.

The cases of *Lovell* v. *Quitman, supra; Matter of Curtis,* 135 App. Div. 745; *Gugel* v. *Vollmer,* 1 Dem. 484, and *Matter of Crawford,* 80 Misc. Rep. 615, cited by counsel for petitioner, relating to revocation in part, are not in point.

Since the only requirement is clearly recorded indicating the testator's intention to revoke exercised on a material part of the will, the court will hold upon the facts as presented that the testator legally revoked his last will and testament.   It is the court's opinion that the decedent was well within the meaning and intent of the law when he wrote his words to indicate his intent and that in fact and in law the will was revoked.

Probate is denied.

Decreed accordingly.