MONTGOMERY v. BUFFALO RY. CO.

(Supreme Court, Appellate Division, Fourth Department.    December 18, 1897.)

1. STREET RAILWAYS—REGULATIONS AS TO PASSENGERS.
    The propriety of a given rule or regulation of a street-railway company is a question of law for the court.
2. SAME—STANDING ON PLATFORM.
    A rule of a street-railway company forbidding passengers from standing on the rear platform is reasonable and proper.
3. SAME—EXPULSION OF PASSENGER.
    A street-railway company has the right to enforce a rule prohibiting passengers from standing on the rear platform by expelling from the car one who refuses to comply therewith.
4. SAME—SICK PASSENGER.
    A conductor is justified in enforcing the rule of a railway company prohibiting passengers from standing on the platform against a passenger who stated that he was suffering from nausea, and might have to relieve himself by vomiting; and it is error to leave the question to the jury.
    Green and Ward, JJ., dissenting.

Appeal from trial term, Erie county.

Action by Edwin W. Montgomery against the Buffalo Railway Company for damages resulting from his being ejected from defendant's cars.    Judgment for plaintiff, and defendant appeals.    Reversed.

The defendant is a corporation, and engaged in operating a street railway in the city of Buffalo.    On the evening of August 17, 1896, the plaintiff entered one of the defendant's cars at the corner of Potomac avenue and Hoyt street, paid his fare, received a transfer ticket, and rode as far as the intersection of Michigan and Exchange streets, where he boarded another car of a connecting line, and took a position upon the rear platform thereof.    One of the defendant's rules provided that conductors should "not allow passengers to sit or stand on or to crowd the rear platform, but will politely request them to take seats, or to stand inside the car."    The conductor of the car in question called the plaintiff's attention to this rule, and requested him to take a seat inside the car, which he declined to do, alleging as a reason therefor that he had a sick headache, accompanied by nausea, which might make it necessary for him to relieve himself by vomiting, and that he was forbidden by another rule of the company from spitting upon the car floor.    The plaintiff was thereupon informed by the conductor that this would not excuse the latter from enforcing the rule forbidding passengers from standing upon the platform, and the request to go inside the car was repeated once or twice.    Plaintiff persisting in his refusal, the car was stopped, and he was ejected therefrom; no more force being employed for that purpose than was necessary, and no physical injury resulting to the plaintiff.    It is not shown that there was anything in the plaintiff's appearance while upon the car to indicate that he was ill, although he testified that he was troubled with nausea, and relieved himself after leaving the car, and before reaching his home.    The place at which he was ejected was about four blocks from his destination, and after he was removed he said to the conductor:    "That is enough.    I am off the car."    The plaintiff brings this action to recover damages for his forcible expulsion from the defendant's car, and at the trial it was left to the jury to determine, as a matter of fact, whether the enforcement of the rule forbidding passengers from standing upon the platform was reasonable, as against the plaintiff, in the circumstances just detailed.    Upon this issue a verdict was rendered in favor of the plaintiff for the sum of $60.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Porter Norton, for appellant.
M. F. Brown, for respondent.
    48 N.Y.S.—54

ADAMS, J.   The right of a railway company to make reasonable
rules and regulations in the management of its business, especially
in the carriage of passengers, is so generally recognized that it is
no longer questioned by any one.   And it is equally well settled in
this state that the propriety of a given rule or regulation thus made
is a question of law to be determined by the court.   Hibbard v. Rail-
road Co., 15 N. Y. 455; Elmore v. Sands, 54 N. Y. 512; Townsend v.
Railroad Co., 56 N. Y. 295; Barker v. Railroad Co., 151 N. Y. 237,
45 N. E. 550; Muckle v. Railway Co., 79 Hun, 32, 29 N. Y. Supp. 732.
In this particular case the rule which the defendant had adopted,
and which required passengers, for their own protection and safety,
to take seats inside the cars, instead of standing upon the rear plat-
form, was obviously reasonable and proper, and it was so regarded
by the learned trial court.   This being the case, it follows that its
enforcement by the defendant in any reasonable manner, even to the
forcible expulsion from its cars of passengers who refused to comply
with its requirements, was justifiable.   Hill v. Railroad Co., 63 N. Y.
101; Peck v. Railroad Co., 70 N. Y. 587.

It is contended, however, that, even conceding the reasonableness
of the rule in question, and the right of the defendant to adopt the
same, its enforcement in this particular instance was unreasonable,
and that, consequently, an unjustifiable assault was committed upon
the plaintiff, for which the defendant is liable.   The single question,
therefore, which is brought up for review upon this appeal, and which
we are called upon to determine, is whether the trial court, in the cir-
cumstances of this case, was justified in submitting the proposition
above stated as a question of fact to the jury.   At the first blush it
would seem that a passenger upon a street car, who asserts that he is
suffering from illness of any kind, ought to be permitted to ride wher-
ever he would suffer the least inconvenience and discomfort, even if
some rule of the carrier is thereby violated.   But what would be
the inevitable result if such a theory were adopted and put into actual
practice?   Street-railroad companies, like the defendant, would estab-
lish rules designed to regulate and facilitate the business for which
they were incorporated, as well as to promote the safety of passen-
gers riding upon their cars.   Courts would declare such rules proper
and reasonable, and yet anybody and everybody who preferred to
ride upon the platform of a car might do so by simply informing
the conductor that he was suffering from a headache, and did not
consider it conducive to his health, or agreeable to his inclination, to
go inside.   And thus a rule, which, in the interest of the traveling
public, ought to be rigidly enforced, would soon become a dead letter
as to every person who, for any reason, desired to evade the same.
For, if its enforcement was attempted under circumstances such as
have been suggested by way of illustration, it would only be neces-
sary for a party ejected to bring an action for damages, swear that
he was suffering from some trifling ailment, and his right to recover
would be indisputably established; as, from the very nature of
things, it would be impossible to prove that his statement was untrue.
We are not aware that the precise question which this case presents
has ever been expressly decided in this state, but it seems illogical to

hold that a railroad company may make reasonable rules for the management of its business, but that, if it enforces the same it will do so at its peril; and this seems to be the view which the courts have entertained in passing upon analogous questions. In the case of Hibbard v. Railroad Co., supra, which was an action to recover damages for the ejection of a passenger who had refused to exhibit his ticket to the conductor a second time, in compliance with a rule requiring him so to do, and which the court held was a reasonable rule, Denio, C. J., uses this significant language:

"I am of opinion that it was lawful for this railroad company to require that persons engaging passage in its cars should show their tickets whenever required by the company's servants intrusted with that duty, upon pain of being left to travel the remaining distance in some other way in case of refusal. I do not think it was correct for the judge to leave it to the jury, as he did, whether the request to show the ticket a second time was reasonable. The regulation required that it should be shown when requested by the conductor, and the question for the court to determine was whether that regulation was lawful."

And in the same case, Comstock, J., says:

"How, it may be asked, is it to be proved that the conductor knew the passenger had paid his fare, if he refuses to exhibit the ordinary evidence of the fact? It can only be proved by showing that the ticket had already been shown to the conductor on some former occasion, or that the passenger himself, or some third person, informed him that the fare had been paid. I know of no other mode of getting at the fact. But the moment that we admit any or all of these modes of inquiry the regulation itself becomes entirely worthless. The conductor clearly is not bound to take the word of a passenger who refuses to comply with the regulation, nor the word of a third person."

In Townsend v. Railroad Co., supra, a passenger purchased a ticket at Sing Sing for Rhinebeck, and took the defendant's train at the former station. He gave up his ticket to the conductor before reaching Poughkeepsie, where he got off, and took another train for Rhinebeck. When required by the conductor of the latter train to exhibit his ticket, he was, of course, unable to do so, and explained the reason why; but the conductor would not accept his statement, and demanded the usual fare. This he declined to pay, whereupon he was ejected from the train, and he subsequently brought his action for damages. The court (Grover, J.) said:

"The conductor of the train upon which he was, was not bound to take his word that he had had a ticket showing his right to a passage to Rhinebeck, which had been taken up by the conductor of the other train. His statement to that effect was wholly immaterial, and it was the duty of the conductor to the company to enforce the regulation, as was rightly held by the trial judge, by putting the plaintiff off, in case he persistently refused to pay fare. The question is whether, under the facts found by the jury, resistance in the performance of this duty was lawful on the part of the plaintiff. If so, the singular case is presented, where the regulation of the company was lawful, where the conductor owed a duty to the company to execute it, and at the same time the plaintiff had the right to repel force by force and use all that was necessary to retain his seat in the car."

Other cases might be cited which, to some extent at least, would support the conclusion we have reached, and which, briefly summarized, is that, where a railroad company has made a rule which can be said, as matter of law, to be a reasonable one, passengers

should not be permitted to nullify the same by insisting that in some particular instance its enforcement is unreasonable. It is, of course, possible that rules which are reasonable may occasionally result in inconvenience, and even hardship, to the passenger; but, as was said by Bradley, J., in the Muckle Case, supra:

"The fact that unforeseen causes may sometimes intervene to produce inconvenience does not necessarily render the regulations unreasonable, or unsuitable for the purposes in view."

And it may be added that the fact that the enforcement of rules may occasionally be attended with inconvenience to the traveling public furnishes no sufficient reason for their nonenforcement at the option of the person inconvenienced, provided the rules are reasonable and proper. But, without attempting to establish a precedent for every possible emergency, it is sufficient to say that the facts of this case do not seem to relieve the plaintiff from the operation of the principle which we think is applicable to, and should be, generally speaking, controlling in, cases of this character.

As has already been suggested, the defendant's conductor had nothing but the word of the plaintiff to indicate that the latter was in any physical distress, and, if he was bound to accept his statement, he would be equally bound to accept the statement of every other person who, for any reason, preferred the platform to the inside of the car. We think that, in the circumstances of this case, he was under no obligation to do this, but that, on the contrary, it was his duty to enforce the rule of the company in whose service he was engaged. If the plaintiff was unwilling to conform to that rule, it was his duty to leave the car. Refusing to do this, the conductor was justified in removing him; and, as it was virtually conceded that no unnecessary force was employed to accomplish his removal, we do not see that any cause of action was made out, and, in our opinion, the trial court should have so held. Graville v. Railroad Co., 105 N. Y. 525, 12 N. E. 51.

Judgment and order reversed, and a new trial directed, with costs to abide the event. All concur, except GREEN and WARD, JJ., dissenting.

GREEN, J., (dissenting). One purpose of the rule is to protect the passenger, but the paramount purpose is to protect the company from liability for injury to the passenger, received while on the platform. Another reason for the rule is the convenience of passengers in entering and leaving the car. It does not appear in this case that there were any other persons on the platform, that the passage was obstructed, or that passengers were in any way impeded.

It is stated in the prevailing opinion that there was nothing in the plaintiff's appearance to indicate that he was ill. Now, if the plaintiff had a sick headache, and was taken suddenly ill, and became sick at the stomach while upon the car, how would he prove it to the conductor? The company certainly would not insist upon his putting in evidence an exhibit. The company had a right to protect itself; but, if a passenger says to a conductor that he is ill, and liable to vomit, and for that reason insists upon riding upon the platform, and

it is not crowded to the inconvenience of others, what difference does it make to the company? The company would not, it seems, be responsible for an injury to the passenger, received while riding in a dangerous position, against the protest of the conductor under such circumstances. There was, therefore, no real necessity for removing the plaintiff from the car, and his removal would, therefore, seem to have been unreasonable. The passenger deemed it unreasonable to require him to go into the car and vomit, perhaps in the presence of the other passengers; but this he was required to do or leave the car. An unexpected and extraordinary circumstance arose, occasioning the necessity for fresh air; and, in order to obtain this, it was necessary for the passenger to go into the vestibule of the car. If he had remained within the car, the result of the illness would probably have seriously interfered with the comfort of the other passengers. It was the duty of the carrier who had received this passenger to protect the other passengers from annoyance, so far as was reasonable and proper. It was also its duty to extend to the plaintiff, who was its passenger, such aid and protection as his then condition required. It was not unreasonable for him, under the conditions and circumstances then existing, to seek temporary relief from his illness by withdrawing from the presence of the other passengers, and going into the vestibule. The company was there upon the platform through its representative, the conductor; and, upon the facts disclosed in the case, the conductor had knowledge of the plaintiff's physical condition. In the exercise of ordinary judgment, the conductor must have known that the result of the plaintiff's illness, if he had remained within the car, would have seriously interfered with the comfort of the other passengers in charge of the company through its conductor. Common civility and the dictates of decency would, or ought to have, instigated the company, as it did the plaintiff, to relieve the other passengers from the annoyance that might have resulted had he remained within the car. The place selected by the passenger neither annoyed nor inconvenienced any one; and he should have been allowed his temporary purpose of gaining relief from his illness, and avoiding the discomfort which might have resulted to the other passengers had he remained in his seat. The right of expulsion, under a reasonable rule, should not be allowed to be exercised arbitrarily or inhumanely, and without due care and regard for the comfort and well-being of the passengers. Even though the rule be reasonable, a humane and proper course should be adopted and followed in its enforcement; in other words, it should be reasonably enforced.

The cases cited by appellant are not analogous to the question at bar. It was not unreasonable, in the Hibbard Case, 15 N. Y. 455, to require the passenger to show his ticket a second time. In the Townsend Case, 56 N. Y. 295, it was held that the conductor was not bound to accept the mere "word" of the passenger that he had a right to travel on the car. There was no evidence to the conductor that he had a right to travel without a ticket or payment of fare. There is a substantial difference between the cases cited by appellant and this one. In those cases the conductor demanded an exhibition of the evidence of the passenger's right to travel. Here the conductor

demands that the passenger produce some other evidence of the truth of the statement besides his own word, that he has sick headache, and is subject to nausea; but this, in the nature of things, the passenger could not produce, except by giving an illustration when the attack came on.

It was held in McMillan v. Railway Co., 172 Pa. St. 526, 33 Atl. 561, that:

"Cases might arise in which it would seem that the rule should not be rigidly enforced, or an immediate compliance with it required; as, where the passenger was at the point of alighting, and his presence for a few moments upon the platform would not endanger or inconvenience any one. * * * A passenger, in any event, would have no right to complain of the enforcement of a reasonable rule, unless he had stated to the conductor an adequate reason for its suspension in his case."

In the case at bar it is conceded that the passenger had stated to the conductor an adequate reason for the suspension of the rule in his case, and, under the circumstances disclosed, I am of the opinion that the trial court was right in the disposition made by it of this case, and that the judgment and order should be affirmed, with costs.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide the event of the action.

WARD, J., concurs.