(52 Misc. Rep. 279)

### In re RAISBECK'S WILL.

(Surrogate's Court, Westchester County. December, 1906.)

WILLS—REVOCATION.

    Testator, who was a lawyer, left in a box with his private papers, under lock and key, a holographic will, written in ink, with certain erasures and interlineations made with a lead pencil, apparently for the purpose of indicating changes to be made on the preparation of a new will. *Held* not to show a revocation of the existing will before the new testamentary act was fully accomplished.

In the Matter of the Probate of the Will of Samuel M. Raisbeck. Probate decreed.

Herbert D. Lent, for proponent.
George W. Hunt, for contestant.

SILKMAN, S. Objection is made to the probate of the paper propounded as the will of the decedent upon the alleged ground that the instrument was canceled by him in his lifetime. The facts are undisputed. Samuel M. Raisbeck was an old gentleman, a lawyer by education, but who had not been in active business for many years. The paper propounded was properly executed on the 27th day of June, 1897, and is holographic; and, so far as it appears no previous will had been made. The decedent had lived for about 45 years as part of the household of Mr. Charles R. Dusenbury, one of the prominent citizens of Yonkers. He died on the 15th day of November, ·1905, stricken down by a stroke of apoplexy, almost immediately fatal. He was of sound mental condition up to the moment that he was stricken. In the closet of the room which he occupied in Mr. Dusenbury's house he kept a tin box, about 18 inches by 12 inches, and about 8 inches in depth. This box contained his private papers and was under lock and key. After his death Mrs. Raisbeck handed to Mr. Dusenbury the key of the box; and the latter, in the presence of witnesses, opened the box and found the paper propounded, the top and most noticeable paper in the box, which was nearly filled with other papers. It was indorsed, "Will of Samuel M. Raisbeck, of Yonkers, N. Y.," in the testator's handwriting. It was in the same condition as when filed for probate. It was originally written entirely in ink, but there now appears upon it certain words and marks, all in lead pencil, to wit: In the fifth line, after the name of Charles R. Dusenbury, the words "and my nephew, Frank R. Magee," have a line drawn through them; and in the next line the final "s" in the words "executors" and "trustees" is stricken out. In the seventh line, a line has been drawn through the word "them," and the word "him" written over it. The same change is made in the ninth and tenth lines. In the twelfth and fourteenth lines, the word "their" has a line drawn through it, and the word "his" written over it. In the fourth line of the third paragraph, providing a legacy for the widow, "twenty thousand" has been written in figures in the margin, and the word "twenty" written over the word "fifteen" in the sentence "fifteen thousand dollars," and then apparently partially erased. In the fourth paragraph, the words "also the same sum to my niece Mrs. William S. Bliss" are underscored, and a line drawn in the margin alongside of the paragraph. Between the first and second lines of the fifth paragraph is written "& charges for lot No. 18 Sleepy Hollow Cemetery"; and in the same paragraph, line 10, a line is drawn through the name "Harriet M. Dunning." At paragraph 6, a line is drawn down the margin opposite the paragraph, and the final "s" in the word "executors" is stricken out. We then come to the signature, and we find a delicate irregular mark through the bottom of the letters constituting "M. Raisbeck." There are three witnesses to the paper, and through these three names are drawn very light marks in the form

of a cross, the pencil lines barely touching the signature of the first witness.

There is no question but that the pencil marks were all made by the testator and subsequent to the execution of the testamentary paper. The contestant claims that these pencil marks were made by the testator with a mind to revoke the instrument. The proponent merely leaves the matter to the determination of the court under the conceded facts. There can be no doubt that under the authorities (Matter of Hopkins, 35 Misc. Rep. 702, 72 N. Y. Supp. 415; Id., 73 App. Div. 554, 77 N. Y. Supp. 178; Id., 109 App. Div. 861, 96 N. Y. Supp. 933; Matter of Philip, 19 N. Y. Supp. 13; Matter of Clark, 1 Tucker, 445), viewed in the light of the circumstances surrounding the custody of the will, there is a presumption that the marks in pencil on the paper— and it makes no difference whether with pencil or with ink (Townshend v. Howard, 86 Me. 285, 29 Atl. 1077)—were made by the testator himself; and, if marks only appeared through the signature of the testator and through the signatures of the witnesses, and not elsewhere, slight as they are, there would arise a presumption that such lines were so drawn for the purpose of revocation. But I am referred to no authority which upholds the presumption in the light of such additional facts as appear in the case before us.

We must therefore look at the situation from the standpoint of human experience, and search for the correct presumption. A presumption is neither more or less than that which is accepted as a fact without proof, by reason of its probability born of human experience. Reflecting upon the circumstances from this standpoint, I am strongly of the opinion that the pencil marks were primarily made as a guide to the making of a new will. The character of each and every one of them shows that the testator had in mind the making of some changes in his testamentary dispositions. Whether this was a fully completed intention, and he had indicated all the changes he desired to make, or whether they were made deliberately and tentatively only, and with a view to make others, we will never know. The manner of making and the substance of them, however, convinces that there was an intention to make another will. We have the undisputed fact that the paper was kept in a strong box, under lock and key, on the top of all testator's other private papers, where it lay constantly before him as a reminder of his intention, whatever it may have been—either a mind to revoke the instrument, coupled with an intention to make a new will, or a mind to change his will, with an intention that revocation should occur upon the making and execution of the new will. I am inclined to adopt the latter theory.

The testator was a lawyer, and we cannot close our minds entirely to the custom in that profession, unwise as it may be, to indicate upon the old instrument the changes that are to be made in the new, while the old instrument is still in force and effective, and using it, with the alterations indicated upon it, as a draft for the new. We have unquestionably a presumption that the testator desired to make a new will; but I do not know of any authority which requires us to indulge under such circumstances in a double presumption, and further presume that revocation should take place before the new testamentary act was fully

accomplished. It is clear that Mr. Raisbeck did not intend to die intestate. It is clearly indicated that he intended his brother-in-law, Charles R. Dusenbury, should be his executor; that certain restrictions should apply to his Central avenue property; that his wife, of whom he speaks affectionately, should have a demonstrative legacy of $15,000 —and as to this there would seem to have arisen a doubt as to whether or not it should be $20,000. He intended that certain personal property should go to the children of his brother; to give legacies to his sister Harriet M. Dunning, and to his niece Mrs. William S. Bliss; and, finally, he intended a trust estate to be created in the residue for the benefit of his sister Mrs. Magee, and for certain of his nephews and nieces. These important provisions were not to be altered; and I think, by reason of the immateriality of the changes made in lead pencil as compared with the importance of those that were to stand, we can see in the mind of the testator an intention to hold to the old will until the new one was an accomplished fact.

The circumstances would seem to justify the application of the rule of dependent relative revocation established by the English authorities —that, where it appears that the cancellation of a will was with the intention of executing a new one, the cancellation does not result in revocation until the new testamentary instrument is executed. Matter of Middleton, 11 L. T. Rep. 684. It was held in Francis v. Grover, 5 Hare, 39, that:

"Every man who makes an alteration in ink supposes that alteration to remain, for the material cannot without such labor be got rid of: but with respect to alterations in pencil the probability is that they have been made as notes, for the purpose of altering the instrument to be changed as the testator thinks fit."

In Powell v. Powell, 14 L. T. Rep. 800, it was stated, in referring to the doctrine of dependent relative revocation:

"This doctrine is based on the principle that all acts by which a testator may physically destroy or mutilate a testamentary instrument are in their nature equivocal. They may be the result of an accident, or, if intentional, of various intentions. It is, therefore necessary in each case to study the act done by the light of the circumstances under which it occurred, and the declarations of the testator with which it may have have been accompanied; for, unless it be done animus revocandi, it is no revocation."

To the same effect is Cossey v. Cossey, 82 L. T. Rep. 203.

Some point is made that certain provisions of the paper propounded are invalid, and others are impossible of execution; but with these questions we have no concern when we are dealing with the sole question as to what was in the testator's mind when he made the pencil marks upon his will, and I think that, in the business of disposing of the latter question, we properly may assume that the testator believed that what he was undertaking to do by his testamentary instrument could lawfully be done. The construction and validity of any of the provisions of the will must be adjudicated upon entirely different principles than those which control the disposition of the question under consideration.

Let findings and a decree be submitted, admitting the paper propounded to probate.

Probate decreed.