In the Matter of the Estate of ESTHER HULL TREMAIN, Deceased.

Surrogate's Court, Westchester County, November 4, 1938.

*Brown, Brenton & Watts,* for the proponents.

*Alvaro J. Adams* [*William F. Bleakley* and *Ralph S. Kent* of counsel], for the contestants.

*John L. Wells,* for Anna S. W. Bigelow and Anna Armstrong, legatees.

*Haywood & Benedict,* for the Society for the Relief of the Destitute Blind of The City of New York and Its Vicinity.

*DeForest, Cullom & Elder,* for The Presbyterian Hospital in the City of New York.

*George N. Whittlesey,* for The Children's Aid Society of The City of New York.

*Stewart & Shearer,* for The New York Society for the Relief of the Ruptured and Crippled.

*Butler, Wyckoff & Reid,* for the Stuyvesant Square Hospital, formerly The New York Skin and Cancer Hospital.

*Rogers H. Bacon,* for St. Luke's Hospital.

*Koboe, Thatcher, Frederick & Hoar,* for the Roosevelt Hospital.

MILLARD, S. The decedent, a resident of Dobbs Ferry, N. Y., died on March 2, 1937, at the age of seventy-nine years. Her husband predeceased her and she left no children or other descendants. Her only distributees are a brother, Stephen H. Jackson; a sister, Abigail Hull Louderback; a niece, Diana Adriana Tucker, and two nephews, Charles Tremain Jackson and Henry H. Jackson, the last three being the children of Henry Hull Jackson, a deceased brother.

She left a paper writing, dated September 15, 1932, which has been offered for probate, as her last will and testament, by the Bank of New York and Trust Company, one of the executors named therein. Stephen H. Jackson, the other named executor, did not join in the application for probate. The purported will attempts to dispose of an estate, said to be in excess of two million dollars, among various named individuals and charitable organizations, among which are the brother, Stephen H. Jackson, and the sister, Abigail Hull Louderback. At the end of paragraph numbered " fifth " thereof, decedent makes the following statement: " I do not wish any of my nieces and nephews to participate in my estate and I have therefore intentionally omitted them from my will. They have sufficient property of their own or have already been amply provided for."

On June 15, 1937, the return date of the probate citation, Henry H. Jackson and Charles Tremain Jackson filed an answer to the petition for probate, which contained three separate defenses. The first defense attacked the validity of certain of the devises and bequests contained in the will; the second defense attacked the validity of the exercise by the testatrix of a power of appointment given to her under the will of her father, Peter A. H. Jackson, and the third defense attacked the validity of certain other devises contained in her will.

On July 21, 1937, this court made an order permitting the consent of Diana A. Tucker to the probate of said paper writing to be withdrawn; her default in appearing and answering on the return date of the probate citation opened; that she have leave to file an answer within ten days after the making and entry of said order; and that the said Henry H. Jackson and Charles Tremain Jackson be permitted to file the answer of Diana A. Tucker as their amended answer.

Thereafter, and on or about July 27, 1937, a combined and amended answer of the original contestants with the original answer of Diana Adriana Tucker was filed. The last-mentioned pleading consisted of fifteen typewritten pages and set up nine separate and distinct defenses. The first defense attacked the validity of the trusts created by clause " fifth " of the will; the second, third, fourth and fifth defenses attacked the validity of the exercise by the testatrix of the aforesaid power of appointment; the sixth defense alleged the testamentary incapacity of the testatrix; the seventh defense alleged that the alleged will had been revoked by said decedent; the eighth defense denied the charitable nature of certain institutions named as remaindermen in said alleged will, and the ninth defense alleged the invalidity of the trusts created

under the " seventh," " eighth " and " ninth " clauses of said will. Of these original nine defenses, seven raised questions of construction only, and two, for the first time, attacked the validity of the paper writing offered for probate.

The original objections were thereafter supplemented by a series of amended answers until, on or about February 24, 1938, the contestants, with the permission of the court, filed their final amended answer with a stipulation that this would be the final pleading. Upon demand, the contestants also served and filed a bill of particulars. On March 9, 1938, the contestants filed a withdrawal of all objections excepting those set forth in their final amended objections.

The final amended answer sets up four defenses, the first of which alleges the revocation of the alleged will. The other three defenses all reassert the issue of the validity of the exercise by the testatrix, in the propounded paper, of a power of appointment granted to her under the will of her father.

The contestants, in their answer, demanded a trial by jury, which was granted by the court as a matter of right, and the parties were directed to proceed to trial upon the following framed issue: Was the instrument propounded as the last will and testament of Esther Hull Tremain, deceased, canceled, obliterated or destroyed by the testatrix or some other person acting in her behalf and with her authority with the intent and for the purpose on her part of revoking the same as her will?

The sole issue before the court at this time is, therefore, that of revocation of the alleged will. The other issues raised by the final amended answer relate to questions of construction only and may not be considered until said paper writing has first been admitted to probate. (Surr. Ct. Act, § 144; *Matter of Davis*, 182 N. Y. 468; *Matter of Webb*, 122 Misc. 129; affd., 208 App. Div. 793.)

The contestants, in their final answer, allege: " That prior to her death the said Esther Hull Tremain duly revoked the paper writing dated September 15, 1932, offered for probate in this proceeding as the Last Will and Testament of said Esther Hull Tremain; that the said Esther Hull Tremain drew lines in ink horizontally through words and figures which words and figures were a part of her alleged will; made interlineations, writings and marks in ink upon her alleged will; accompanied the making of said marks, writings and interlineations and lines with declarations, all with the intention and purpose of revoking her Will by cancellation and did thereby revoke her will."

The bill of particulars filed by contestants specifies the physical acts and writings constituting the alleged act of revocation as follows:

" 1. The time when physical acts claimed to amount to revocation were performed was on or about the 12th day of March, 1936; the place where said acts were performed is No. 106 Lexington Avenue, Manhattan borough, New York City. The physical acts amounting to revocation, except those hereinafter specified, are the making by testatrix of marks, lines and writings in ink, appearing upon the face and margin of the alleged Will, with the exception of the date when said alleged Will was executed, the alleged signature of the alleged testatrix, the names of the alleged witnesses and their alleged addresses. The additional acts in revocation were the statements and declarations made orally by the alleged testatrix, which statements and declarations, made in the present tense, accompanied the making by testatrix of said marks, lines and writings and were explanatory thereof and expressive that the alleged testatrix then and there revoked her will. * * *

" 2. The alleged physical acts of revocation were in writing and spoken declarations and statements. All the writings, marks and lines in ink upon said alleged will, except the signatures of the testatrix, and the subscribing witnesses and their addresses, were made and written by the alleged testatrix in the presence of witnesses. The said marks, lines and writings of the alleged testatrix were not subscribed to by the alleged testatrix nor attested in writing by witnesses thereto. * * *

" 5. Other conduct relied upon in proof of the acts of revocation is: the utter and complete disregard by the alleged testatrix of her said alleged will; the manner in which she treated said alleged will, having no regard to its safety."

The propounded instrument covers eleven typewritten pages of the usual legal cap size. It is signed at the end thereof by the testatrix and, after her signature, there is a seal. Then follows an attestation clause which, in turn, is followed by the signatures and residence addresses of three witnesses. It contains twelve numbered clauses, fifty-one paragraphs, thirty lettered subdivisions and clauses, sixteen minor specific bequests and devises, and two major residuary bequests and devises disposing of a large appointive and a large personal estate among eight charitable corporations. It is a document of over three hundred lines and three thousand words. Upon the first, fifth, sixth, seventh and tenth pages thereof are certain marginal marks and interlineations in pencil and in ink. Of its eleven pages, six bear no alteration whatever either in pencil or in ink. Within these six unaltered pages is the whole of clause " fifth," covering three full pages. The markings and interlineations in ink alone constitute the alleged acts of cancellation under the allegations of the final amended

answer and of the bill of particulars. The markings and interlineations in pencil may, therefore, be disregarded. Upon examining the alleged will we find that the alleged acts of revocation consist of the making of the following "marks, lines and writings in ink:"

1. The words "one mile from Stormville my Mother's Home" added to the last line of paragraph numbered "fourth," on page 1;

2. A bifurcated line extending from the margin of page 5 and spreading fork-like around subdivision "(d)" of paragraph numbered "sixth;"

3. The words "& Two Thousand" written in ink after the word "diamonds;" and then crossed out with three pencilled horizontal lines at the end of subdivision "(g)" of paragraph numbered "sixth" on page 5;

4. A curved line extending from the front of subdivision "(i)" but not touching it, into and down the margin and to and through subdivision "(k)" to and immediately above the first word "To" of that subdivision, its end barely impinging upon said word "To" of paragraph numbered "sixth" on page 5;

5. Two horizontal lines in ink drawn through the words "Five hundred" and the figures "($500)" in subdivision "(k)" of paragraph numbered "sixth" on page 5;

6. The words "Five Thousand" written over both "Five hundred" and "($500)" in said subdivision "(k)" of paragraph numbered "sixth" on page 5;

7. The words "I dont quite understand this" in ink written in the margin opposite the first part of paragraph numbered "eighth" on page 6;

8. A cross-mark in ink on the margin of page 10 between the first and second paragraphs of subdivision "(e)" of paragraph numbered "twelfth" and opposite said cross-mark further out in the margin of said page the words "Dont understand," on page 10.

It is to be observed that no markings, either in pencil or in ink, are to be found on page 11, the last page, of the alleged will, which contains the signature and seal of the testatrix, the attestation clause and the names and addresses of the witnesses.

The markings and alterations in ink, comprising the alleged acts of revocation, may be classified under three specific headings: (1) interlineal and marginal lines and writings, (2) marks crossing out script, and (3) "dependent relative," cross marks and interlineations over the same.

The contestants contend, in substance, that any physical act of cancellation, however slight, if coupled with an intent to revoke the will, is a sufficient revocation.

The proponent, on the other hand, contends that the interlineal and marginal lines and writings upon the alleged will are of no force and effect under clearly established law, and must be wholly disregarded; that the marks crossing out script are not acts of "canceling" within the meaning of section 34 of the Decedent Estate Law; and that the cross-marks and interlineations in subdivision "(k)" of paragraph numbered "sixth" of the alleged will come within the universally established doctrine of "dependent relative revocation" and, in and of themselves as a matter of law, conclusively indicate an intent on the part of the testatrix that the force, effect and validity of these markings and interlineations were to be relative only, not absolute, and dependent upon the legality and validity of the superimposed interlineation.

Upon the trial herein, each of the three witnesses to the will testified that it was executed by the testatrix with the requisite statutory formalities, and that, at the time of execution, the testatrix was of sound mind and memory and not acting under restraint. They further testified that, at the time of such execution, none of the markings in pencil or in ink were upon it; that it was a "clean" will. One of the witnesses to the instrument was the attorney who prepared it and who superintended its execution. The other two witnesses were employees of the Bank of New York and Trust Company, at whose place of business the will was executed.

Section 34 of the Decedent Estate Law provides that no will in writing, nor any part thereof, may be revoked or altered otherwise than by (1) some other will in writing; or (2) some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or (3) unless such will be burnt, torn, canceled, obliterated or destroyed, "with the intent and for the purpose of revoking *the same*, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses." (Italics mine.)

This statute was patterned after the English Statute of Frauds which had as its object the prevention of fraud and perjury. The original English Statute of Frauds was followed by a later English statute passed during the reign of Queen Victoria and known as the "Wills Act." This act provided "that the same formalities should be required in the execution of wills of personal as in those of real estate, and declared (1 Vict. § 21, chap. 26) that no obliteration, interlineation or other alteration made in any will after the execution thereof shall be valid or have any effect (except so far

as the words or effect of the will before such alteration shall not be apparent), unless such alteration shall be executed in like manner as hereinbefore is required for the execution of the will; but the will, with such alteration as part thereof, shall be deemed to be duly executed, if the signature of the testator and the subscription of the witnesses be made in the margin, or on some other part of the will opposite to or near to such alteration, or at the foot or end of, or opposite to, a memorandum referring to such alteration, and written at the end or some other part of the will." *(Wetmore v. Carryl,* 5 Redf. 544, 551.)

Many of the other States of this country have a statute of revocation similar to ours. The statute of this State dealing with the revocation of wills is plain. It specifies the acts which may work revocation and in effect declares that there is no other way. (*Matter of Evans,* 113 App. Div. 373, 374.)

" To revoke a will, it is necessary not only that there should be an intent to revoke the will, but the intent must be consummated by some of the acts specified in the statute, or by the execution of an instrument ' declaring such revocation.' * * *

" A revocation to be effective must be made pursuant to the statute. (*Lovell* v. *Quitman,* 88 N. Y. 377; *Burnham* v. *Comfort,* 108 N. Y. 535; *Delafield* v. *Parish,* 25 N. Y. 9; *Matter of Evans,* 113 App. Div. 373.) It is not within the legitimate power of the courts to dispense with the requirements of statute in the execution or revocation of wills and accept even a definite intention to perform the prescribed act in connection therewith or the act itself. (*Hoitt* v. *Hoitt,* 63 N. H. 475.) * * *

" The statute relating to the revocation of a will is specific and unqualified. So is the statute regarding the execution of a will. Both are intended for literal compliance. * * * Formalities in the making and in the revocation of a will are necessary to prevent mistake, misapprehension and fraud. The interests of the People are best subserved by sustaining the statute quoted as it is written." (*Matter of McGill,* 229 N. Y. 405, 411, 412.)

*Lovell* v. *Quitman* (88 N. Y. 377, affg. 25 Hun, 537) was a case where the testatrix had obliterated the " 2d " and " 4th " clauses of her will " with a purpose and intent " to revoke the same. The surrogate admitted the will to probate. The case was in due course appealed to the Court of Appeals. That court, in the course of a comprehensive opinion, carefully considered the meaning of the statute relating to revocation of wills (then 2 R. S. part 2, chap. 6, tit. 1, art. 3, p. 64, § 42) and laid down a principle of statutory construction which has guided the lower courts ever since in applying the statute to the particular facts of each case. In that

case the court, after calling attention to the fact that the statute is in two parts, said: " But when we find in the first clause that the will, or any part thereof, can be altered by a writing only when duly attested, and in the second clause the words ' or any part thereof ' omitted, we are bound to give effect to the specific words actually · used, and say that no obliteration can be effective as to part, unless it altogether destroys *the whole will*. . We have no power to interpolate other words." (Italics mine.)

In *Matter of Curtis* (135 App. Div. 745), which was an appeal from a decree of the Surrogate's Court of Queens county admitting a will to probate, the court said: " While it may be conceded that there is some evidence of an intention on the part of the testator to alter his will and revoke the 3d paragraph thereof, mere intention to revoke or alter is ineffectual unless accompanied by such physical act as the statute declares to be necessary to accomplish the purpose. (*Matter of Akers*, 74 App. Div. 461; affd., on opinion below, 173 N. Y. 620.) " (See, also, *Matter of Ridgway*, 141 Misc. 582; *Matter of Hildenbrand*, 87 id. 471; *Matter of Crawford*, 80 id. 615; *Matter of Lang*, 9 id. 521.)

The law in this State is clear that, in cases where alterations or erasures have been made by the testator subsequent to the execution of the will, the document in its original form must be admitted to probate if such original condition can be ascertained. (*Matter of Enright*, 139 Misc. 192, 193, and cases cited.)

The statute (Dec. Est. Law, § 34) admits of no revocation of an executed will by obliteration, except an *entire obliteration* with intent to revoke the *whole will*. (Italics mine.) (*Quinn* v. *Quinn*, 1 N. Y. Supr. Ct. Repts. [T. & C.] 437.) The cases are uniform in holding that a mere casual alteration of a will, even with the intent to revoke the whole instrument, is insufficient.

The words, " I dont quite understand this," appearing on the paragraph of page 6, and the words " Dont understand," on page 10 of the alleged will, alleged by the contestants to constitute parts of the act of cancellation, are, in my opinion, definitely disposed of in *Matter of Webb* (*supra*), where the court said: " If a will could be contested upon the ground that the testator did not understand the legal effect of technical provisions or phrases in the instrument, a new and fertile source of depleting estates, delaying probate and compelling settlements would be developed."

The cancellation of a will means any act done which in common understanding is regarded as cancellation when done to any other instrument. It must be an act done to the will itself and on the will itself by words which manifest an intent to annul it. (*Matter of Parsons*, 119 Misc. 26; affd., 204 App. Div. 79; affd., 236 N. Y. 580.)

The question here is not whether Mrs. Tremain made a valid will but whether she left one. It is not what she intended but what was the effect under the law of her acts. The act and intention to revoke must coincide and complete each other. The intention alone, however urgent and fixed, not accompanied by some act of revocation mentioned in the statute, will not revoke.

This is not a case where the intent of the testatrix can be gathered from the instrument itself. If the ink markings upon the alleged will were made by the testatrix with the idea and purpose of drawing a new will, then the doctrine of " dependent relative revocation " is applicable. This doctrine is defined as follows: " When a will, or portions thereof, are canceled or mutilated in order to change the will in whole or in part, and the attempt fails for want of due authentication, or other cause, this effort to revoke in whole or in part will be treated as relative and dependent upon the efficacy of the new disposition intended to be substituted, and hence, if the attempted disposition is inoperative, the revocation fails also, and the original will remains in force." (62 A. L. R. 1401, and cases cited; *Ely* v. *Megie*, 219 N. Y. 112, 138.) This doctrine was expressly recognized in *Matter of Raisbeck* (52 Misc. 279) upon facts similar to those in the case at bar. There the court said: " The circumstances would seem to justify the application of the rule of dependent relative revocation established by the English authorities, that, where it appears that the cancellation of a will was with the intention of executing a new one, the cancellation does not result in revocation until the new testamentary instrument is executed. (*Matter of Middleton*, 11 L. T. Rep. 684.) " (*Casey* v. *Hogan*, 344 Ill. 208; 176 N. E. 257; *Eschbach* v. *Collins*, 61 Md. 478.)

If, on the other hand, the ink markings were made for the purpose of revoking her will, such markings are, in my opinion, insufficient in law to accomplish that purpose and the will must be admitted to probate in its original form. (Dec. Est. Law, § 34; *Matter of Enright, supra.*)

The court must, in the first instance, determine whether or not the revocatory acts are sufficient, and this is a matter of law. (*Matter of White*, 106 Misc. 210; *Matter of Bissonette*, 127 id. 215; affd., 217 App. Div. 809.)

After the testimony of the witnesses to the will had been offered, the proponent moved for judgment on the pleadings. A motion for judgment on the pleadings may be made at any stage of the proceeding. (Civ. Prac. Act, § 476.) After hearing such a motion, the framed issue of fact is not relevant or material; the pleadings only may be considered. No issue of fact is raised except the contingent issue of intent. The existence of that issue is relative

and dependent upon the court holding that, as a matter of law, the markings and alterations upon the alleged will constitute a statutory act of canceling.

The motion is accordingly granted, the objections dismissed and the paper writing, dated September 15, 1932, admitted to probate.

Settle decree accordingly.