Joseph A. Cox, S.
In this contested probate proceeding, tried without a jury, a preliminary jurisdictional issue was presented by a contention that the decedent, concededly a resident of this State, was not domiciled in New York County. The decedent had resided for many years prior to 1958 in an apartment building located on Central Park West in this county and in 1958 she became a patient in New York Hospital. Thereafter the decedent was taken by her sister-in-law to the latter’s home in Bronx County where she died. There was proof that the decedent intended to give up her apartment in Manhattan and go to live with her brother in a home that was being purchased on Long Island, that the decedent had made preparations for the removal of her belongings from the apartment to her brother’s home and that she had consulted her landlord about the termination of her obligation for rent. However, the dece *577 dent paid the apartment rent for the month of August, 1958 on the eleventh day of that month and died two days later, prior to a removal of her possessions from the apartment.
Upon these facts it is clear that the decedent intended to remove from New York County to her brother’s home on Long Island but an actual removal or the assumption of a new residence never was accomplished. A change of domicile requires not only an absolute and fixed intention to abandon an existing domicile but the actual acquisition of another by accomplished acts in confirmation of the intention (Matter of Newcomb, 192 N. Y. 238; Matter of Trowbridge, 266 N. Y. 283). Statements of the clearest intent are inadequate to provide the fact of residence (Texas v. Florida, 306 U. S. 398, 425). The conclusion must be reached that this decedent never abandoned her established residence in this county and she died domiciled here. Nothing in the evidence lends any support to the contention that the decedent ever acquired a residence in Bronx County.
The proof respecting the validity of the propounded paper established that it was executed in accordance with the statutory requirements, that the testatrix had testamentary capacity and that she was free from restraint. The basic issue in this proceeding is whether defacement of the will accomplished its revocation. The instrument consists of five pages and a cover. The entire text of the instrument, including the attestation clause, is in long-hand printing. Upon that portion of the cover which was folded over the face of the instrument as a flap, to enclose the pages and permit their being fastened together, there appear the words “ This will is not good — Mrs. Louise Sax ” and on the face of each page there are intersecting lines, roughly in the form of a letter X. These cross-marks do not extend over the entire writing on each page but neither are the marks confined to particular paragraphs nor separate dispositive provisions. The marks on the final page extend over the full attestation clause. The writing on the cover flap and the decussations are in red pencil or red crayon. It has been established that the written words and the signature are in the decedent’s hand.
The methods available to effect a revocation of a will are specified in the Decedent Estate Law (§ 34) and, generally speaking, fall into three categories which are: (1) revocation by another instrument executed -with the formalities required by the Decedent Estate Law (§ 21); (2) revocation by physical destruction of the instrument; and (3) revocation by physical alteration of the instrument. The paper before the court falls into the last-mentioned category. The statement of the testatrix that6 6 This *578 will is not good ”, standing alone, cannot effect a revocation inasmuch as this writing was not an act performed with the essential statutory formalities (Matter of Parsons, 119 Misc. 26, affd. 204 App. Div. 879, affd. 236 N. Y. 580; Matter of Akers, 24 App. Div. 461, affd. 173 N. Y. 620). In the latter decision it was said (pp. 467-468) “ The great weight of authority is to the effect that a mere writing upon a will which does not in anywise physically obliterate or cancel the same, is insufficient to work a destruction of the will by cancellation, even though the writing may express an intention to revoke and cancel. Where a will is sought to be revoked solely by writing, it must conform in that respect to the requirement of the statute, and, failing in that, it does not revoke the will, even though there may be a clear intention so to do.”
The submission of the will in its present form obviates any consideration of destruction, burning, or tearing and the ultimate question is whether the decussations upon the pages accomplished an obliteration or cancellation. Obliteration does not mean that the text of the will is rendered unreadable and it has been said that a single line drawn through a writing may be regarded as obliteration. In the Parsons case (supra) Surrogate Slates, stated the elements of obliteration as the concurrence of the physical act with the intention to revoke and, in that case, the Surrogate found the words written across the face of the instrument to be an obliteration and the necessary intent to be expressed in such words. In the case at bar we do not have an analogous fact situation inasmuch as the words of this testatrix do not appear over the text of the instrument and do not constitute the act of obliteration. The words of this testatrix may be regarded as expressive of an intent only upon proof that such writing and the markings upon the text were a single transaction in a manner to be regarded as a simultaneous act of revocation (Matter of McCaffrey, 174 Misc. 162,167). Direct proof of such fact is lacking and the sole basis for any such conclusion is the inference arising from the fact that both the words and the decussations are in red, a color not normally employed for casual writing.
The word cancellation as used in section 34 of the Decedent Estate Law has been defined as the making of cross lines upon a writing (Matter of Alger, 38 Misc. 143) and it was said in Matter of Barnes (76 Misc. 382, 384-385):
“ The only office which lines upon the face of a will need fulfill in order to invoke the warrant of the statute quoted supra is that they shall be a manual indication by the testator of the meptal conception thqt be inten4s t° annul his will. Their form *579 and extent or other essence are all totally unimportant so long as they are a physical token of the inward intent.
‘1 If the marks, in the light of all surroundings, symbolize this purpose, their mission is performed whether they be plain or fantastic, mechanical or verbally intelligible.”
There is some suggestion in the decision that lines defacing a will should extend over its entire length and breadth, or a vital part thereof, so that the defacement clearly affects the complete instrument but examination of the opinions discloses that this is not an imperious rule and the question always is whether the markings were intended as cancellation of the complete instrument or merely as alterations or cancellations of particular testamentary provisions (Matter of Tremain, 169 Misc. 549, affd. 257 App. Div. 996). The markings on the will now before the court obviously were not limited to the deletion of particular clauses and, while the canceling lines do not extend from top to bottom and from margin to margin, their irregular shapes and their positions on the pages evidence a purpose to cancel each and every page.
It has been held that lines drawn through the signature of a testator or through the signatures of subscribing witnesses amount to an effective obliteration (Matter of Kuntz, 140 Misc. 598; Matter of Parsons, supra) and that this is so because the signature is recognized as the symbolic embodiment of the whole will (Matter of Griffith, 167 Misc. 366, 370). Here the fifth page of the instrument contains only the signature of the testatrix, the attestation clause and the signatures of the witnesses and cross lines have been drawn over the entire attestation clause and the signatures of the witnesses. Such defacement is plain proof that the purpose of the testatrix was to annul the entire instrument, not merely to change a portion thereof, since the executed attestation clause is to be regarded as a vital part of the document.
The fact, here existing, that the will was found among the decedent’s effects creates a prima facie presumption that the obliterating marks were placed thereon by the decedent animo revocandi. (Matter of Hopkins, supra; Matter of Parsons, supra.) In the instant case there is the further fact that the written words were in the decedent’s hand and, like the obliterating marks, were in red. The conclusion to be drawn from the possession of the will by the testatrix, the character of the marks thereon and their positions on the pages is that the testatrix intended to revoke the will and effectively did so.
Submit decree on notice denying probate and denying the application to revoke letters of administration.