OPINION OF THE COURT
Edward M. Horey, S.
The decision here made is on the objection of the guardian ad litem to the probate of the last will of the decedent.
The decedent, J. Richard Collins, died on February 5, 1982 at the age of 38. He is survived by his spouse, Cheryl R. Collins, and two infant children, Mary Kathryn Collins, age 14, and John Christian Collins, age 13. Suggestive of some marital disharmony, it is noted that the decedent resided, at the time of his death, at a different address from that of his wife and children. However, it is clear that at the time of the decedent’s death he was married to Cheryl R. Collins.
Following the death of the decedent, an examination of the decedent’s safe-deposit boxes and private papers was made to discover a will. No will was discovered. Later, on or about February 11, 1982, a three-page document purporting to be the last will of the decedent was found in the *670 safe of Collins Memorials, Inc., a corporation. This document is dated the 14th day of August, 1970. This document has been offered for probate.
In probate proceedings this court appointed Mary Jane Nevins, an attorney, as guardian ad litem to represent the interests of the two infant distributees of the decedent. At the request of the guardian ad litem, the two attesting witnesses were examined. Also examined was attorney Jeremiah J. Moriarty, III, who is the person who discovered the will offered for probate.
In its initial state, the entire will was typewritten except for the signature of the testator and the two subscribing witnesses. In its present state, the will contains certain handwritten notations and interlineations, some of which have been dated and signed, or initialed by the decedent, and all of which were made in the decedent’s own handwriting according to the testimony of the three witnesses who were sworn. Both of the subscribing witnesses testified that the handwritten notations and interlineations now present on the will were not on the will when it was executed by the decedent.
The instrument consists of three pages. It contains six numbered paragraphs. Paragraph Fifth contained five lengthy subparagraphs.
The changes and interlineations made by the decedent are in paragraphs Third, Fifth, and Sixth.
The Third paragraph as originally drafted was in the form of a bequest of the Allegany Library Association in the amount of $500. By penned notation, that bequest has been changed to provide for a bequest to Archbishop Walsh High School in the amount of $10,000.
The alteration to paragraph Fifth was to change a bequest of the residuary estate to the decedent’s wife, Cheryl Collins, into a trust of the residuary to the First Trust Union Bank, Wellsville, New York, for the benefit of the decedent’s children.
The remaining change in the will is to paragraph Sixth. There the decedent, by interlineations, deleted the names of two persons named as primary legal guardians for his *671 children, and left unexcised the names of two alternate guardians.
Despite the interlineations and writings which have been made, all of the original provisions of the will are completely legible.
For determination is the effect of the interlineations and writings which the decedent made upon his original will after the execution of it.
The proponent of the will urges that the will be admitted to probate in its original form. The guardian ad litem urges a determination that the will be declared revoked and that testator’s property be-declared to pass in intestacy.
As the decisional law of this and other States attest, cases such as the one at bar are difficult. (See, generally, Ann., 24 ALR2d 514-562.) It is helpful if the ultimate question for resolution is kept in mind. That ultimate question always is whether the markings on the will were intended as a revocation of the complete instrument, or alternatively, were alterations or cancellations made with the intent and purpose of drawing a new will. (Matter of Tremain, 169 Misc 549, 558, affd 257 App Div 996, affd 282 NY 485; Matter of Sax, 25 Misc 2d 576, 579; Matter of Akers, 74 App Div 461, 467, affd 173 NY 620; see, generally, Ann., 24 ALR2d 514, 518-519.)
In the will in issue, there is wholly absent any writings which indicate an intent on the part of the testator to revoke the will. This distinguishes it from the will in Matter of Parsons (119 Misc 26, affd 204 App Div 879, affd 236 NY 580), where the testator had written the words “will revoked” and “this will revoked”, diagonally across' the face of the will and signed his name below the writing. Such writings were held indicative of an intention to revoke. In contrast, in Matter of Akers (74 App Div 461, affd 173 NY 620, supra), where there were words of revocation which were written, but the writings were on a margin of the paper and not across it, it was held that the will was not revoked. The court there stated (pp 467-468): “The great weight of authority is to the effect that a mere writing upon a will which does not in any wise physically obliterate or cancel the same, is insufficient to work a *672 destruction of the will by cancellation, even though the writing may express an intention to revoke and cancel.” Similarly, in Matter of Miller (50 Misc 70), a predecessor Surrogate of Cattaraugus County (Davie, S.), held that an indorsement by the testator on the back of the will that the will was revoked was ineffective and did not revoke the will.
Note is made that no lines were drawn through the signature of the testator, nor those of the attesting witnesses. Thus, the case at bar is to be distinguished from Matter of Kuntz (140 Misc 598) and Matter of Parsons (119 Misc 26, affd 204 App Div 879, affd 236 NY 580, supra), which held such markings to be an effective obliteration. (See, also, Matter of McCaffrey, 174 Misc 162; Matter of Kutzner, 173 Misc 776.) Such holdings are on the grounds that the signature is recognized as the symbolic embodiment of the whole will. (Matter of Griffith, 167 Misc 366, 370.)
In the case at bar, the markings on the will were limited to the deletion of only parts of particular clauses. This is significant as it negatives an intention to cancel the complete instrument. (See Matter of Sax, 25 Misc 2d 576, 579, supra; cf. Matter of Lavigne, 76 AD2d 975, affd 52 NY2d 1008.) Alternative provisions for the deleted parts were inserted. This is also significant as it is indicative of an attempt to draw a new will, not revoke an existing one. (See Matter of Tremain, 169 Misc 549, 558, supra.)
Concededly there is one case where the sheer quantum of the obliterations was held significant and determinative of an intent to revoke. Thus, in Matter of Lavigne (76 AD2d 975, 976, affd 52 NY2d 1008, supra), the single case relied upon by respondent, it appeared that “every one of its dispositive provisions” had been marked through. (Italics added.) In addition, the testator had attempted to draft the provisions of a new will at the bottom of the original will. Stressing the totality of obliterations, the court held that they evidenced an intent to revoke even though the word “change” had been written.
In contrast, in the will in issue, only 2 of 5 dispositive paragraphs and only 3 of the 16 paragraphs constituting the will have been altered. In the opinion of this court, *673 Matter of Lavigne [supra) represents an extreme determination, and in the light of other decisional law, it can be rationalized only because of the totality of the obliterations which were made and the fact that an entirely new and different will had been drafted by the testator. Note is made that the only case cited in support of the determination made in Matter of Lavigne was Matter of Seidel (65 AD2d 649), an earlier determination made by the Third Department. A review of Matter of Seidel discloses that it did not deal with the question of obliteration by markings and writings, rather, there, the question was one of physical destruction as the will had been torn into pieces. Further, the decision in Matter of Seidel had, in turn, been predicated on the Court of Appeals decision of Matter of Bonner (17 NY2d 9), wherein a will had also been cut into pieces by the testator. Thus, no case involving obliteration by markings and writings was noted in support of the decision reached in Matter of Lavigne.
There is present in the case at bar a further ground on which to distinguish Matter of Lavigne and all other cases cited to the court or discovered by the court’s review, wherein a determination has been made that alterations to the will were intended to revoke the will. That basis is the custody of the will. Here, the will was not in the custody of the decedent. It was located in a safe-deposit box of a corporation to which others, as well as the decedent had access. Thus, the presumption that arises from custody of the will by the testator, viz.: that the obliterations were effected with an intent to revoke the will (see Matter of Bonner, 17 NY2d 9, 11, supra, and cases there cited) is held inapplicable to the case at bar.
It is not sufficient to merely characterize the markings on a will as obliterations, cite definitions of “obliteration” and then point to the provisions of EPTL 3-4.1 (subd [a], par [2], cl [A], subcl [i]) which provides:
“[a] will may be revoked by:
“(A) An act of burning, tearing, cutting, cancellation, obliteration, or other mutilation or destruction performed by:
“(1) the testator.”
*674 This is for the reason that it has been repeatedly held that the elements of an obliteration for the purpose of revoking a will are the concurrence of the physical act with the intention to revoke.
“A line drawn through a writing is doubtless obliteration, though it may leave it as legible as it was before. Obliteration is not annihilation, but we must have both an act and an intent concurring.” (Matter of Parsons, 119 Misc 26, 31, affd 204 App Div 879, affd 236 NY 580, supra.)
“In all of the cases to which our attention has been called there has been a physical cancellation of some of the words * * * accompanied by an intent to cancel.” (Matter of Akers, 74 App Div 461, 467.)
“The act and intention to revoke must coincide and complete each other.” (Matter of Tremain, 169 Misc 549, 558, affd 257 App Div 996, affd 282 NY 485.)
“In the Parsons case (supra) Surrogate Slater stated the elements of obliteration as the concurrence of the physical act with the intention of revoke”. (Matter of Sax, 25 Misc 2d 576, 578.)
The obliteration of a single line or a key clause or phrase of a will if accompanied by the requisite intent to revoke would revoke the will. Contrariwise, the obliteration of all provisions in the will if not accompanied by the requisite intention to revoke would not revoke the will. See Matter of Barnes (76 Misc 382, 385), wherein it was said of markings on a will “[tjheir form and extent or other essence are all totally unimportant so long as they are a physical token of the inward intent.” To same effect see Matter of Sax (25 Misc 2d 576, 578-579, supra.)
The simplest examination of the will in issue manifests that all that the testator intended to do was to alter the terms of bequests which he had previously made in paragraph Third and Fifth of his will and to delete two persons previously designated as alternative guardians of his infant children in paragraph Sixth of his will. The instrument speaks only of an intent to change, not revoke. This is inferred from the acts of the testator to the will in issue. An examination of the original instrument is much more confirmatory of that inference than an attempted oral explanation.
*675 Clearly, the attempts of the decedent to set forth different testamentary dispositions were not done with the formalities prescribed by EPTL 3-4.1. It is agreed that they cannot be given effect.
What effect then is to be given to the testator’s attempts to change particular provisions of his will? In New York, where partial revocation is not permitted, except in accordance with the statutory requirements of the execution of a codicil or a new will, it is established that if the original provisions are discernible the will is to be admitted to probate in its original form. (Lovell v Quitman, 88 NY 377, 381; Matter of Ackerman, 129 App Div 584, 585; Matter of Van Woert, 147 App Div 483, 485; Matter of Ridgway, 141 Misc 582, 583 [Wingate, S.]; Matter of Moerlins, 197 Misc 715, 717; Matter of Reedy, 64 NYS2d 779; Matter of Kuntz, 64 NYS2d 749.)
This court holds that a like disposition is to be made of the will in issue.
While this court has determined that the intent of the testator was to change his will and not revoke it, there is at hand another basis to support the result which has been reached. It is the doctrine of “dependent relative revocation”.
A complete explanation of the doctrine of dependent relative revocation was given in Matter of Tremain (169 Misc 549, 558, supra). “This doctrine is defined as follows: ‘When a will, or portions thereof, are canceled or mutilated in order to changó the will in whole or in part, and the attempt fails for want of due authentication, or other cause, this effort to revoke in whole or in part will be treated as relative and dependent upon the efficacy of the new disposition intended to be substituted, and hence, if the attempted disposition is inoperative, the revocation fails also, and the original will remains in force.’ (62 A.L.R. 1401, and cases cited: Ely v. Megie, 219 N. Y. 112, 138.) This doctrine was expressly recognized in Matter of Raisbeck (52 Misc. 279) upon facts similar to those in the case at bar. There the court said: ‘The circumstances would seem to justify the application of the rule of dependent relative revocation established by the English authorities, that, *676 where it appears that the cancellation of a will was with the intention of executing a new one, the cancellation does not result in revocation until the new testamentary instrument is executed. (Matter of Middleton, 11 L.T. Rep. 684.)’ (Casey v. Hogan, 344 Ill. 208, 176 N. E. 257; Eschbach v. Collins, 61 Md. 478.)” (Italics added.)
As in the instant case, even if it were determined that this court was wrong in its determination that the testator intended to change rather than revoke his will, application of the doctrine of dependent relative revocation would produce a like result.
For years the Surrogates’ Courts of this State have shied away from the application of the doctrine. This in great measure has been as a consequence of a determination reached by Surrogate Foley in Matter of McCaffrey (174 Misc 162, 173) wherein upon review he stated bluntly: “[t]he history of our statutes, the decisions and our public policy exclude the existence of the doctrine of dependent relative revocation as a rule of law in this State”.
The conclusion of Surrogate Foley was disproved in an excellent wide-ranging and analytical review of the New York law by Justice Bergan in Matter of Macomber (274 App Div 724). In speaking for that court, Justice Bergan noted, inter alia, that a Massachusetts case strongly relied upon by Surrogate Foley, nonetheless, concluded that the doctrine was a part of the law of Massachusetts. He also noted that contrary to Surrogate Foley’s conclusion, the doctrine had been applied expressly in New York in Matter of Raisbeck (52 Misc 279). He also noted that the doctrine had firm foundation in the English law and had been commented upon favorably by a number of New York courts. His conclusion was that the doctrine should be applied in Matter of Macomber (274 App Div, at p 728) “But the facts here fit well within the classic pattern of the rule in its most reliable aspect, and it ought to be applied to the facts of this case”. This court accepts the conclusion of the Third Department as expressed by Justice Bergan that the doctrine of “dependent relative revocation” does exist as a rule of law in the State of New York.
On analysis, the principal objection of Surrogate Foley to the application of the doctrine of dependent, relative *677 revocation was that it was predicated on surmise and was “wrapt in speculation and conjecture without proof” (Matter of McCaffrey, supra, p 167). However, while there undoubtedly is merit to that learned Surrogate’s objection, it does not seem to this court that an objection of surmise is any more meritorious in the area of revocation of wills, than it is to other areas of probate law. Surmise could be the basis of objecting to applying the “rule of constructional preference” under which a court surmises what a testator would have done with a remainder interest in a situation which the testator clearly had not anticipated. While it is based on surmise, the rule of constructional preference has general acceptance in the New York courts. (See 7B Warren’s Heaton, Surrogates’ Courts, § 77, pars 4 [c], [g], and cases cited; Matter of Bogart, 62 Misc 2d 114, 119; Matter of Brahaney, 117 Misc 2d 46.)
Similarly, it is actually surmise which justifies the anti-lapse statutes which are contained in the Estates, Powers and Trusts Law (e.g., EPTL 3-3.3; 7B Warren’s Heaton, Surrogates’ Courts, § 77, par 4 [c])- Such a statute evidences the public policy of the State. Undoubtedly, if time permitted, other examples predicated on surmise could be found in the field of probate law.
Further, application of the doctrine of dependent relative revocation serves a useful office in cases such as that for decision. This is for the reason that it supports the judicially established preference against intestacy, a preference which becomes even stronger where, as in the instant case, a residuary estate is in issue. (See Matter of Dammann, 12 NY2d 500, and cases there cited.) This court is of the opinion that it is not even arguable that the testator here preferred to die intestate. His every effort was to the contrary. He sought to leave a will. While this court for the reasons noted cannot give effect to those changes which he sought to make to his will, does it not serve him better by at least insuring that he died testate, rather than intestate? At least in so doing those dispositions which he attempted to make in his initial will and which he was satisfied to leave unchanged in his attempt to change other provisions, will be given effect. This court is of the opinion that the testator is served better by a pro tanto distribution *678 of his assets as he clearly wished under the terms of his will than by taking action which would result in complete intestacy. Whether applied to his estate or his table “half a loaf” is still, better than none.
As a second and alternative string to the bow of testacy, this court holds the doctrine of dependent relative revocation is applicable to the will in issue if the acts of the testator are to be regarded as those of revocation and not those of ineffective change as has been determined.
In either event, the direction of the court is that the original will of thé decedent, divorced of interlineations, cross markings and written changes be admitted to probate and letters testamentary issued to the coexecutors there named.