paid, such legacies are *prima facie* treated as vested upon the testator's death and not contingent.'' Page Wills, 783; Underhill Wills, 1304; *Matter of Crane,* 164 N. Y. 71; *Goebel* v. *Wolf,* 113 id. 405; *Matter of Gardner,* 140 id. 122; *Matter of Morris,* 9 App. Div. 602; affd., 154 N. Y. 778.

It is not within my province or jurisdiction to determine what the testator might have done, but to interpret the intention of the testator as expressed in his last will. There is no specific mention nor use of the word '' vesting.'' There is no contingency or restriction in the bequest to the four children after the determination of the life estate to Carrie Spitzmiller.

I am of the opinion that all general rules give way to the dominant and supreme rule that '' each will is to be construed by itself and depends for its meaning largely upon its own context and subject matter.'' The precise words in question are not the same as used in any of the cases cited. Giving due consideration to the rules and cases cited in support thereof, I, therefore, find that the trust fund created by the testator for Carrie Spitzmiller vested in his four children at the time of his death.

Decreed accordingly.

---

Matter of the Probate of the Will of CHARLES I. SEVERANCE, Deceased.

(Surrogate's Court, Essex County, July, 1916.)

Wills — subscription of — requirement of statute — attestation clause — Code Civ. Pro. § 2612.

Where a testator affixed to his will a holiday seal printed in colors and thereon inscribed his initials above and below the word "seal," which was also in his handwriting, the requirements of the statute that a will must be subscribed by the tes-

tator are satisfied if he intended the holiday seal and his inscription thereon as a signature.

Where the attestation clause is complete the failure of the subscribing witnesses to testify positively to the testator's subscription to his will in their presence, or to the acknowledgment of the signature to them, may well be referred to lack of memory and a finding that the will was subscribed by decedent in the presence of the subscribing witnesses is justified in view of the provisions of section 2612 of the Code of Civil Procedure.

PROBATE proceeding.

A. W. Boynton, for proponent.

PYRKE, S.   No objections have been filed.

The question arises upon the proofs whether the decedent subscribed the will, and, if he did, whether it was subscribed in the presence of the attesting witnesses, or the signature acknowledged to them by the decedent.  The amount of property involved is small. The questions presented are not free from difficulty, and one of them quite novel.

The execution of the will took place about five months before the decedent's death.  He was about fifty years of age and a mechanic by occupation.  He had been for some time a justice of the peace.  The will was prepared upon what is commonly known as a " will blank," in which the conventional portions were printed, with blank lines to be written upon by the draughtsman.  Except for the conventional printed portions of the will, it is entirely in the handwriting of the decedent.  The witnesses to the will are husband and wife.  The husband is a cousin of the decedent.

About a week or two before the will was executed the decedent stated to this cousin that he had " made

a will and was going to bring it over." He told this cousin of the disposition which he had made of his property, which checks with the provisions of the will. The will gives all of the property to the widow and his and her daughter. He gave as a reason for not giving any property to his two daughters by his first wife that they " were getting along well enough." On the day of the execution of the will the decedent came to the residence of the two witnesses, and produced the will, and in the presence of the witnesses did some writing upon it, and asked the witnesses to sign it. The witnesses signed the attestation clause, which is complete. After the will was executed the testator placed it in an envelope, upon the face of which are these words in his handwriting, " Last will of Charles I. Severance. Dec. 21, 1912." After placing the will in the envelope he sealed the envelope and delivered it to Mrs. Beardsley, one of the witnesses, and requested her to keep it for him, which she did, and it was in her possession at the time of his death. The witnesses' recollection of what else occurred on the occasion is hazy. Both witnesses knew that the paper was intended as a will, because the cousin to whom the decedent made the statements about his will repeated those statements to his wife.

This will possibly might have been admitted to probate without hesitation and as a matter of routine, were it not for the unusual and peculiar method that the decedent adopted for subscribing the will. At the foot of the printed form is a dotted line, followed by the letters " L. S." in brackets. This line, of course, was left for the signature of the testator. In the will as executed there is no writing upon this dotted line, but near the end of the line, partially covering the initials " L. S." has been affixed a wafer seal, printed in colors, and containing this inscription,

" Merry Christmas.
American Red Cross.   1912
Happy New Year."

Written upon this seal in pen in the handwriting of the
testator is this inscription,

" C S
Seal
C S "

The recollection of both witnesses is uncertain as to
whether they observed this seal at the time of the
execution of the will.

If the testator intended this holiday seal with his
inscription upon it as a signature, and adopted it as
such, I think it satisfies the requirements of the stat-
ute that a will must be subscribed by the testator.  It
is well settled that a subscription by making a mark
and without any written name is a compliance with the
requirements of the statute (*Jackson* v. *Jackson,* 39
N. Y. 153), and it would seem logical to say that a sig-
nature by initials is entitled to as much respect as a
signature by mark.  No authorities in this state on this
subject have been called to my attention, but the mat-
ter has been considered in other forums.  In *Matter of
Goods of Savory,* 15 Jur. 1042, a will was upheld
where the testator wrote only his initials; and in *Mat-
ter of Goods of Emerson,* L. R. (9 Ir.) 443, the will
was also held valid where the testator affixed a seal
stamped with his initials and pronounced it his hand
and seal.  In *Knox's Appeal* it was held by the Penn-
sylvania Supreme Court (6 L. R. A. 353), that the
first name only of a testator may be a sufficient signa-
ture to a will.  It has been held in this state that an
imperfect or indistinct subscription of a testator's
name to his will may be regarded as his mark.  *Hart-
well* v. *McMaster,* 4 Redf. 389.  It is a debatable ques-

Surrogate's Court, Essex County, July, 1916.   [Vol. 96.

tion, incapable of exact solution, whether the testator intended to adopt this seal with this inscription as his signature, or whether he intended it as a seal only and neglected to sign his name. The disposition which the testator has attempted to make of his property is such a natural one, and the proofs are so clear that he intended this document as a testamentary disposition of his property, that I feel that the surrogate should not be astute to search for reasons for rejecting this will, but, on the other hand, should strive to sustain it, especially where the interested parties all being of full age raise no objections. I, therefore, hold that the testator adopted this seal and his endorsement upon it as a signature.

A more serious, though less novel, question is whether there was a compliance with the command of the statute that the subscription of the testator's name shall be made in the presence of the attesting witnesses, or be acknowledged by the testator to have been so made. The proofs on both branches of this question are exceedingly meagre, and if there were any suspicious features in the situation it would not be difficult to find some justification for a holding that the testator neither subscribed this will in the presence of the witnesses, nor acknowledged to the witnesses the signature to be his. I do not feel, however, called upon to make this holding, especially in view of the rule that prevails in respect to holographic wills. In *Matter of Levengston*, 158 App. Div. 69, it was stated that the requirements as to proofs of execution of holographic wills are not so strict as where the will is drawn and executed under the direction of an experienced scrivener. The same influences that have operated to uphold this will on the first question discussed are operative here as well. Inasmuch as the attestation clause is complete, and the failure of the

witnesses to testify positively to the subscription of the will in their presence, or the acknowledgment of the signature to them, may well be referred to a lack of memory, I feel justified, in view of the provisions of section 2612 of the Code, in holding that the will was subscribed by the decedent in the presence of the witnesses.

Decreed accordingly.