John H. Weibneb, -S.
On May 25, 1955, the decedent, Catherine F. Mack, signed her last will and testament prepared by her attorney who, together with his secretary, were the attesting witnesses. All interested parties concede, and the proof confirms this concession, that the will was duly executed and attested as required by law, and that the decedent was competent and free from restraint and undue influence.
The decedent retained the original will, and a conformed carbon copy was kept by her attorney. On June 13, 1961 she died. Her -safe-deposit box was opened but the original will was not found therein.
On June 16, 1961, the named individual executrix and an assistant trust officer of the corporate coexecutor searched the apartment of the decedent. In an unlocked tin box under the decedent’s bed the afore-mentioned original will was found in an unsealed engraved will envelope bearing the printed address of the firm of attorneys who prepared it.
*891 The will consisted of four typewritten pages stapled within a typical engraved will cover. It was briefly examined by its discoverers. The assistant trust officer failed to note any unusual condition, nor was his attention called to anything unusual by the individual executrix who did not testify in this proceeding.
Within an hour the will and its envelope were delivered to the attorney who prepared the same. He turned it over to his secretary for copying. She then observed that part of page 4 of the will was missing.
All of page 4 following the typed attestation clause was torn off and has never been found. The missing part of the page contained the full signatures and addresses of the witnesses. Nothing remains except slight ink marks indicative of some of the top loops of the numbers and letters forming part of the written address of the first witness to sign.
Except for this missing part of page 4, the remainder of the will, its cover, and envelope are in pristine and prime condition. The signature of the decedent is not obliterated, scratched out or marked in any way. In the margins of the first, second and third pages of the will appear the written initials of the attesting witnesses, the last set of initials being located opposite the testimonium clause. These initials likewise are not obliterated, scratched out or marked in any way.
In this proceeding the named executors and certain of the beneficiaries, some of whom are distributees, ask that this instrument be probated. The remaining distributees and the special guardian for a missing distributee and beneficiary ask that probate be denied because this instrument was revoked.
The proponents urge that, despite the afore-mentioned tearing, the instrument is a complete and validly executed will and entitled to probate in its present form. The main thrust of proponents’ argument is that both witnesses signed “ as witnesses to the will” at the request of the decedent by signing their initials on the margin of page 3 of the will opposite the testimonium clause. At the trial precise questions on this point were asked and the answers given without objection by the contestants.
That such initialing of page 3, as well as pages 1 and 2, may have served the additional purpose of identifying the pages is immaterial. Each witness swore that he and she “ signed as a witness ” by initialing these pages.
Multiple signing by the same witnesses has been held to be no bar to probate of a valid portion of a will, when the second
*892 attestation related to a part of the will not validly executed (Matter of Serveira, 205 App. Div. 686).
Neither the testimonium clause nor the attestation clause is a necessary part of a will (Younger v. Duffie, 94 N. Y. 535). All the dispositive and intended administrative provisions precede the point of the signing of the last set of initials. Initials, and even a mark, are acceptable forms of signatures (General Construction Law, § 46; Matter of Romaniw, 163 Misc. 481; Matter of Severance, 96 Misc. 384; Morris v. Kniffin, 37 Barb. 336). Therefore, these initials, as signatures of the witnesses, do appear at the end of the will.
On this record this court finds and holds that the initials of the witnesses on page 3 of the will were intended by them as signatures authenticating and attesting this will in compliance with section 21 of the Decedent Estate Law. As such, this instrument in its present form is admitted to probate.
This court further rejects on the facts and the law the claim that the will was revoked. The simple question posed is whether or not this will was torn by the testatrix herself with the intent and for the purpose of revoking the same, within the meaning of section 34 of the Decedent Estate Law.
That the full signatures of the attesting witnesses were torn off is clear. But who tore this page? When was it torn? With what intent was it torn? Speculation in this area is no substitute for reason and common sense.
The burden of proof is on the party asserting revocation (Matter of Parsons, 119 Misc. 26, affd. 204 App. Div. 879, affd. 236 N. Y. 580; Matter of Fox, 17 Misc 2d 773; Matter of Crouse, 205 App. Div. 135, 141, affd. 238 N. Y. 583).
The contestants have failed to meet this burden. Too much reliance has been placed on the inference or presumption that the decedent performed this act of tearing with intent to revoke since the will was in her possession. The other evidence before this court overcomes any such inference or presumption.
The tearing could well have occurred after death (Matter of Rowe, 165 N. Y. S. 1064). Clearly others had access to this will. It was found in an unsealed envelope in an unlocked tin box under decedent’s bed on June 16, 1961. She died in her apartment on June 13, 1961. Obviously some one or more persons did enter her apartment for the purpose of removing her body.
When the executors checked her premises, the assistant trust officer had a key to the front door. Whoever originally possessed the key had access to the premises, to'the box and to the will.
*893 Even during the search, hoth searchers were not together at all times. The corporate fiduciary’s representative was absent for approximately one hour, leaving the individual executrix alone in the apartment. She was not produced as a witness by either party.
More significant, however, is the lack of proof of an intent to revoke. The law is clear “ that there must be not only the physical act of cancellation in some one of the forms mentioned in the statute, but that the act must be accompanied by the intent to cancel and destroy the instrument as a will.” (Matter of Akers, 74 App. Div. 461, 467, affd. on opinion below 173 N. Y. 620.)
This is not a case of cancellation, obliteration, or tearing of the signature of the testator, an act which prima facie spells revocation because it goes to the heart of the execution of a will (Matter of McCaffrey, 174 Misc. 162; Matter of Monette, 282 App. Div. 987).
Nor is this a case where “ the fact of the accomplishment of this act by the testator and the requisite revocatory intent are established beyond question by his own writing and signature.” (Matter of Kuntz, 140 Misc. 598, 599; see, also, Matter of Semler, 176 Misc. 687.)
The tearing off of an unessential part of this will, leaving intact the necessary signature of the testatrix and the initialed signatures of the witnesses, negatives a finding of intent to revoke the whole will. As was said in Matter of Curtis (135 App. Div. 745, 747): ‘1 The tearing or obliteration of one clause in a will, although with a purpose of revoking the same and permitting the remainder of the will to stand, is not effectual for that purpose. No tearing or obliteration can be effectual unless it altogether destroys the whole will and was intended so to do.”
To supply proof of such intent the contestants offered the testimony of Alice Sheehan, a sister-in-law of the decedent. In essence she asserted that the decedent and the principal beneficiary had a falling out, with an accompanying declaration by decedent that she had taken this beneficiary’s name out of the will.
This testimony was received over objection but subject to a reserved decision on a motion to strike. This motion is granted and the testimony will be stricken.
These alleged statements of the decedent did not accompany the act of tearing and do not establish the intent with which the act was done, even assuming the act was that of the decedent. Not being part of the res gestee they are inadmissible (Matter of Suarez, 114 N. Y. S. 2d 194).
*894 This principle was clearly enunciated in Matter of Kennedy (167 N. Y. 163, 172): “ the great weight of authority in this state is to the effect that the declarations of a deceased person are not competent evidence either to prove that he has made a will or to prove the continued existence of a written will, unless made in connection with some act under such circumstances as to become a part of the res gestae, and declarations of the deceased tending to show that a written will has been revoked are open to the same objection, unless they accompany some act which the statute prescribes as a requisite of revocation, and then they are received as in other cases as part of the res gestae.’’’
The Kennedy case was cited and quoted with approval in a recent decision of Matter of Fox (9 N Y 2d 400). The Fox case also cites and quotes from Throckmorton v. Holt (180 U. S. 552) which squarely rules against the admissibility of testimony of this character.
Even assuming the admissibility of this evidence, it falls far short of buttressing the requisite proof of intent to revoke the whole will.
At most we have the testimony of an obviously partisan witness, that sometime in 1955 the decedent first stated that she had taken out of the will the name of one of the principal beneficiaries. This testimony cannot be related convincingly to an intent to revoke the entire will. For at least five years after the alleged statement was made the decedent consulted with her personal attorney who drew the will, never mentioning to him any change of plans. Such silence is completely inconsistent with the picture of this woman’s character, experience and revealed interests.
The decedent was a strong-minded woman, with business experience as a real estate salesman, and meticulous in money, legal and business matters and records. The propounded instrument discloses careful planning, gifts for religious purposes, gifts to friends outside the family, and a careful selection of certain members of her family as her beneficiaries and the rejection of others. A cavalier revocation of this instrument as a whole is utterly incongruous and unbelievable.
This court cannot find that the alleged informal statement of taking the name of a beneficiary out of the will, even if admissible, tends to prove in the slightest degree that the decedent did, in fact, personally tear this part of the will with an intent to revoke the whole thereof and thus destroy the total plan for the disposition of her estate.
Submit decree on notice admitting the propounded instrument to probate as decedent’s last will and testament.